753 So.2d 630 (2000)
Wayne SANDS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D99-363.
District Court of Appeal of Florida, Fifth District.
February 25, 2000.
Rehearing Denied April 5, 2000.
*631 Ryan Thomas Truskoski of Jaeger & Blankner, Orlando, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Alfred Washington, Jr., Assistant Attorney General, Daytona Beach, for Appellee.
PETERSON, J.
Wayne Sands appeals the trial court's denial of his motion to suppress evidence of cocaine found in his vehicle after he was stopped for improper display of a license tag.
At approximately 1:30 a.m., a police officer stopped a minivan driven by Sands. The officer informed Sands that the temporary tag taped to the inside of the rear window was not visible from 100 feet, and was, therefore, improperly displayed. Because of the tint of the window, the officer was unable to see the tag until he was only a few feet behind the van. The officer warned Sands that before the minivan was operated again, the tag must be placed in a position where it would be visible. According to the officer, Sands agreed to comply with that order before being released with a verbal warning.
A short time later, at 2:50 a.m., the same officer saw the minivan again near the location where the first stop took place. The officer noticed that he still could not see the tag and began following the minivan. The officer followed the van, lost it, and then caught sight of it again. Twenty-three minutes later, the officer stopped the van because the temporary tag was in the same place with no improvement in the visibility. Sands explained that he had had no opportunity to move the tag to a position of better visibility before he began driving the vehicle again. The officer asked Sands if he had any illegal drugs or contraband in the van and if he could search the vehicle. When Sands said no, the officer called for a canine unit and began issuing a citation for displaying a tag that was not visible for a distance of at least 100 feet, a violation of subsection 316.605(1), Florida Statutes (1997). The officer testified he was still writing the citation when the canine unit arrived, approximately 15 minutes after the initiation of the stop. The dog alerted to the presence of drugs and 2.7 grams of cocaine were found in the van.
Charged with possession of cocaine, Sands entered a plea of no contest and reserved his right to appeal the denial of his motion to suppress the cocaine. In this appeal, Sands argues that subsection 316.605(1), the statute with which he was charged, does not apply to temporary tags. Although we agree that subsection 316.605(1), does not apply to temporary tags, the investigatory stop can still be upheld if there was an objectively valid reason for it. See, e.g., Scott v. State, 436 U.S. 128, 138, 98 S.Ct. 1717, 56 L.Ed.2d 168 (1978). We conclude that a reasonable officer would have been justified in stopping Sands for failing to display a temporary tag in a clearly visible manner in violation of subsection 320.131(4), Florida Statutes (1997).
The law governing the display of temporary "tags" and permanent license "plates" has, in recent years, been uncertain. In 1997, the legislature modified Florida Statute section 320.131, by including a new subsection (4), which reads as follows:
Temporary tags shall be conspicuously displayed in the rear license plate bracket or attached to the inside of the rear window in an upright position so as to be clearly visible from the rear of the vehicle....
Ch. 97-300, §§ 13, 54 at 5398, 5421, Laws of Fla. Florida Administrative Code Rule 15C-1.005 had previously authorized the taping of a temporary tag to the "rear view window in an upright position" but that rule was repealed with an effective *632 date of March 4, 1996. Prior to the legislature specifically authorizing the placement of temporary tags on the interior of a car's rear window, drivers risked being stopped and being issued a citation for a violation of section 316.605, Florida Statutes. Section 316.605, entitled "Licensing of Vehicles," states in pertinent part, that every vehicle shall display a license plate:
securely fastened to the vehicle outside the main body of the vehicle in such manner as to prevent the [plate or] plates from swinging, with all letters, numerals, printing, writing, and other identification marks upon the [plate or] plates clear and distinct and free from defacement, mutilation, grease and other obscuring matter, so that they will be plainly visible and legible at all times 100 feet from the rear or front.
Between the March 4, 1996 repeal of the administrative rule and the enactment of the modification of section 320.131, effective October 1, 1997, one interpretation of section 316.605, was that a temporary tag had to be displayed in the same manner as a permanent license plate, to wit: illuminated at night, securely fastened in the spot for a permanent license plate, and visible from 100 feet. Holmes v. State, 710 So.2d 651 (Fla. 4th DCA 1998).
The stop of Sand's van took place in May of 1998, over six months after subsection 320.131(4) became effective. The new subsection authorizes the placement of temporary tags "attached to the inside of the rear window in an upright position" as long as, when so placed, they are "clearly visible from the rear of the vehicle." Sands had only partially complied with the requirement. Although the tag was properly positioned, the dark tint of his car window obscured the temporary tag so that the arresting officer could not recognize it until he was within five feet of it. Because probable cause existed that a traffic violation had occurred, the stop of Sands' van was valid. Whren v. U.S., 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (U.S.1996); see also Holland v. State, 696 So.2d 757, 759 (Fla.1997) (Whren court rejected reasonable officer test in favor of a strict objective test which only asks whether any probable cause for the stop existed).
Sands also complains that the second stop was prolonged in order for the drug dog to arrive at the scene. The stop was made at approximately 3:13 a.m. The drug dog arrived on the scene approximately 15 minutes later. The officer testified that he was still writing the ticket for the section 316.605 violation when the dog arrived. We will not disturb the trial court's conclusion that the officer's testimony was credible and that the stop was not otherwise too lengthy. See, e.g., U.S. v. Sharpe, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (U.S.1985); State v. Hewey, 471 A.2d 236 (Vt.1983).
Appellant's conviction and sentence are affirmed.
AFFIRMED.
W. SHARP, and HARRIS, JJ., concur.