STATE of Iowa, Appellee,

v.

Carl Ernest BERGMANN, III, Appellant.

No. 00–0778.

Supreme Court of Iowa.

Sept. 6, 2001.

Rehearing Denied Oct. 3, 2001.

advances the employee's interest in choosing his own doctor.

* Senior Judge assigned by order pursuant to Iowa Code section 602 .9206 (2001).

Linda Del Gallo, State Appellate Defender, and Stephan J. Japuntich, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, Thomas J. Ferguson, County Attorney, and Danielle Davis and Mark Taylor, Assistant County Attorneys, for appellee.

SNELL, Senior Judge.*

Several searches occurred in this case, justified by different burdens, and conducted in different ways. We have occasion to decide if any were unconstitutional, and, if so, what effect that search had on subsequent searches. Because we agree with the district court that no constitutional rights were violated, we affirm.

## I. Factual Background and Procedure

The defendant, Carl E. Bergmann, was parked in an alleyway when Officer Ken Dill noticed his car. Officer Dill was immediately suspicious as this was an area notorious for drug activity and Chester Polk, a well-known narcotics dealer, was standing next to the passenger side of the car. Polk noticed Dill and immediately left. Bergmann then began to drive away quickly. Dill observed that Bergmann's license plate light was not lit, and decided to pull him over.

Once alongside the vehicle, Officer Dill recognized Bergmann from an arrest he had made in 1996 involving possession of a handgun and a large quantity of marijuana. Bergmann also had two female passengers. Dill testified that at this point he felt concerned for his safety given his past involvement with Bergmann. Dill then asked Bergmann if he had stopped anywhere recently. Bergmann answered that he had not, a fact which Dill knew to be untrue as he had just seen him stopped in the alleyway.

Officer Dill asked Bergmann to step out of the car to show him the unlit license plate. While out, Dill noticed that Bergmann was acting anxious and impatient. Dill asked to search the car, and Bergmann refused to give his consent. At this point, Dill decided to call in the canine

---

* Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2001).

unit. Before it arrived, Dill patted down Bergmann for weapons. He found none. He also looked under the driver seat for a weapon, the place he had found a weapon in 1996, but again found nothing. Dill testified that the canine and his handler, Officer David McFarland, arrived "within minutes." Dill speculated that at the most it took Officer McFarland between five and ten minutes to arrive. All passengers were evacuated and the dog walked around the vehicle. The dog was trained to sit when the smell of narcotics was present. The dog indicated he smelled a controlled substance inside the vehicle.

Given this reaction, the officers felt they had probable cause to conduct a search of the entire vehicle. From the search, they found a pouch under the front passenger seat containing a small quantity of marijuana. A larger quantity of marijuana and marijuana paraphernalia were later found in the trunk. Bergmann was arrested and charged with possession of a controlled substance in violation of Iowa Code section 124.401(5) (1999).

Bergmann filed a suppression motion. He argued that the scope of the search was not justified by the facts. He did not take issue with the pat-down search of his person or under his seat, but rather with calling in the canine unit and the search of his vehicle that followed. At the suppression hearing, Bergmann's attorney admitted: "But based on his past history with Mr. Bergmann, Officer Dill felt that a weapons check was necessary. Now, I can even acknowledge that permissible for the officer's safety and those types of reasons...." Where Bergmann felt the police stop crossed the line of legality was when the dog was called to the scene. Bergmann argued that because Dill stopped him for a traffic violation, he is bound by this reason for the scope of the encounter. When the encounter escalated to a drug investigation, this exceeded the scope of the traffic stop.

The motion was denied. The court determined that given all of the reasons present for Dill to be suspicious, it was reasonable for the canine unit to be alerted. It stated on the record:

> The fact that the taillight or license plate was not functioning did give the officer the right to stop the car. At that point the officer learned that the defendant had been previously involved or arrested or convicted, as I understand it, for possession of marijuana. He also knew that at a prior time he was talking to a known drug dealer. And that would give him ... reasonable grounds to suspect that drug activity may have been involved. I think the summoning of the canine unit under those circumstances is not unreasonable ... and the search in this case is not subject to suppression.

As such, the evidence seized was held admissible against Bergmann. He was later convicted of violating section 124.401(5) and sentenced to 180 days in jail, with 150 of those days suspended.

On appeal, Bergmann argues his prolonged detention to wait for the drug dog cannot be constitutionally justified. He maintains that the search of his vehicle was a search incident to a citation and not based upon probable cause. He also makes the curious argument that the initial pat down prior to the arrival of the canine unit "did not produce any inculpatory evidence and, therefore, all of the evidence gathered after those searches should be suppressed as fruits of the poisonous tree." This is the first time Bergmann has argued that the initial pat down was unconstitutional. In fact, this is a step away from the admission made at the suppression hearing by Bergmann's attorney that

it was within Officer Dill's right to conduct a pat down for safety purposes.

## II. Scope and Standard of Review

When constitutional rights are implicated, we review a court's ruling on a suppression motion de novo. *State v. Heminover,* 619 N.W.2d 353, 356 (Iowa 2000). "In doing so, we independently evaluate the totality of the circumstances shown in the record." *State v. Seager,* 571 N.W.2d 204, 207 (Iowa 1997); *accord State v. Canas,* 597 N.W.2d 488, 492 (Iowa 1999). Because this case involves constitutional issues: "We give deference to the district court's fact findings due to its opportunity to assess the credibility of witnesses, but we are not bound by those findings." *State v. Turner,* 630 N.W.2d 601, 606 (Iowa 2001).

## III. Preservation of Error

Although the State concedes that error has been preserved on every issue raised on appeal by filing the timely suppression motion, we disagree. Particularly, we do not believe Bergmann preserved the validity of the pat down for error. At no time before the district court did Bergmann argue his pat down was unconstitutional. His motion did not specifically raise this and the hearing transcript does not show this issue being raised. The court's ruling on the motion was based on the dog sniff "search" and the search that occurred because of the dog's alert. No mention was made of the initial pat down. The discussion at the hearing suggests that Bergmann waived this constitutional challenge when his attorney acknowledged that given everything known to Dill, it was proper to do a pat down.

In a similar case we noted and held:

[C]ounsel did not simply remain silent and rely on the questionable objection already made. He affirmatively stat-ed—twice—that he had no objection to the very evidence whose admission he now says amounted to reversible error....

....

On the record before us we hold that defendant waived his objection to admission of the [evidence]....

*State v. Schmidt,* 312 N.W.2d 517, 518 (Iowa 1981); *accord State v. Terry,* 569 N.W.2d 364, 369 (Iowa 1997). Because Bergmann "cannot have it both ways," this argument was not preserved for error. *Schmidt,* 312 N.W.2d at 518; *accord Terry,* 569 N.W.2d at 369.

However, on appeal Bergmann also makes an ineffective assistance of counsel argument. He asks us not to penalize him if his attorney failed to preserve error on any issue. As such, preservation should not be a problem if it was the result of a counsel deficiency. *State v. Button,* 622 N.W.2d 480, 483 (Iowa 2001). "Ineffective assistance claims operate as an exception to our error preservation requirements." *Id.* Although the constitutionality of the pat down was not preserved for error, Bergmann may still allege it through ineffective assistance of counsel.

## IV. Issues on Appeal

There are three challenged searches that occurred in this case: (1) the pat down of Bergmann and the search under the driver's seat before the canine unit arrived; (2) the extended detention and dog sniff; and (3) the search of the car after the dog indicated the smell of drugs was present. We conclude that all three searches were constitutionally conducted.

### A. The Pat Down

Police are allowed to pat down a suspect if they have reasonable suspicion that a crime is being or is about to be

committed. *Terry v. Ohio*, 392 U.S. 1, 30–31, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889, 911 (1968). They may also do a pat down if there is a reasonable suspicion that the person is armed and the officer's safety is in danger. *Id.* at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. Two cases are instructive here given our facts. *Illinois v. Wardlow*, 528 U.S. 119, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000); *State v. Cline*, 617 N.W.2d 277 (Iowa 2000). Both cases hold that mere presence in a known narcotics-dealing area does not give police reasonable suspicion of wrongdoing to conduct a pat down. However, when coupled with other factors like flight upon seeing police, nervousness, evasiveness or lying, past experience with the suspect, etc., reasonable suspicion may be justified. *See Wardlow*, 528 U.S. at 124–25, 120 S.Ct. at 676, 145 L.Ed.2d at 576; *Cline*, 617 N.W.2d at 282–83.

■ Here, Bergmann was spotted in a known drug area alongside a nefarious drug dealer. When the drug dealer saw police, he immediately retreated from Bergmann's car, and Bergmann drove away quickly. Dill recognized Bergmann from a past weapon and drug arrest. Dill felt concern for his safety. Bergmann lied to Dill about where he had been recently. Bergmann acted nervous while outside the car. Given all of these factors, Dill had reasonable suspicion to pat down Bergmann for weapons. Moreover, once Dill concluded that further investigation was reasonably necessary, he was warranted to assure his protection by ensuring that those in his presence were not armed.

We believe Officer Dill was also justified in looking under Bergmann's seat for a weapon given his past experience with Bergmann. We have upheld immediate vicinity pat downs where the officer
> searched only under the front seat, where he suspected a weapon may be: he limited his search to "what was mini-

mally necessary to learn whether [the suspect was] armed...." Furthermore, by removing [the defendant] from the car and immediately reaching only under the front seat, "[i]t is clear that the intrusion was strictly circumscribed by the exigencies which justifi[ed] its initiation."

*State v. Riley*, 501 N.W.2d 487, 490 (Iowa 1993) (quoting *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884, 20 L.Ed.2d at 911; *Michigan v. Long*, 463 U.S. 1032, 1051, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201, 1221 (1983)). Again, after Dill resolved to call the drug dog, he acted properly to ensure his safety until it arrived. *See Terry*, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909.

■ Further, we are skeptical that Bergmann can raise any successful constitutional challenge regarding this pat down because nothing was found from it that is now being used against Bergmann. The fact that nothing was found also breaks any chain between this search and later searches because the pat down did not disclose any evidence to prompt Dill to continue, which might have tainted later searches. The fruit of the poisonous tree doctrine bars evidence found in subsequent searches only when the evidence was found by virtue of the first illegality. *Wong Sun v. United States*, 371 U.S. 471, 487–88, 83 S.Ct. 407, 417, 9 L.Ed.2d 441, 455 (1963). That is not the case here. The canine unit had already been called when the pat down occurred—so it is clear Dill had an independent justification for the later "search" apart from the pat down. Moreover, even if the pat down had never occurred, the drug dog still would have arrived to smell for narcotics. As such, even if the pat down were unconstitutional, there is no link between the pat down and the subsequent searches.

Because arguing that the pat down tainted later searches would have been

futile, counsel was not ineffective for failing to challenge it. *State v. Ceaser*, 585 N.W.2d 192, 195 (Iowa 1998) ("Trial counsel is not incompetent in failing to pursue a meritless issue.").

### B. The Prolonged Detention and the Dog Sniff

 Jurisprudence in this area is fairly clear—a dog sniff that occurs outside a vehicle is not a search under the meaning of the Fourth Amendment. *See, e.g., United States v. $404,905.00 in United States Currency*, 182 F.3d 643, 647 (8th Cir.1999). *See generally United States v. Place*, 462 U.S. 696, 707, 103 S.Ct. 2637, 2644–45, 77 L.Ed.2d 110, 121 (1983) (providing a general legal discussion for all dog sniffs). Because it is not a search, neither probable cause nor reasonable suspicion must be present to justify it. *See generally* 2 Wayne R. LaFave et al., *Criminal Procedure* § 3.2(b), at 58–59 (2d ed.1999).

 This issue prompts us to comment on a recent Supreme Court decision. *Id.* at —, 121 S.Ct. 2038, 150 L.Ed.2d 94 (2001). In *Kyllo*, the Supreme Court invalidated the use of thermal imaging technology to gain information inside a home that would not otherwise be apparent without physical invasion. When sense-enhancing technology that is not in general use is utilized on the home, this constitutes a search protected by the Fourth Amendment.

> We have said that the Fourth Amendment draws "a firm line at the entrance to the house." That line, we think, must be not only firm but also bright—which requires clear specification of those methods of surveillance that require a warrant.... Where, as here, the Government uses a device that is not in general public use, to explore details of the home that would previously have been unknowable without physical intru-

sion, the surveillance is a "search" and is presumptively unreasonable without a warrant.

*Id.* at —, 121 S.Ct. at 2046, 150 L.Ed.2d at 106 (quoting *Payton v. New York*, 445 U.S. 573, 590, 100 S.Ct. 1371, 1382, 63 L.Ed.2d 639, 653 (1980)).

We find that this holding does not disturb the nearly twenty years of precedent regarding dog sniffs and vehicles. As recently as 2000, the Supreme Court held a dog sniff of a car is not a search. *City of Indianapolis v. Edmond*, 531 U.S. 32, 40, 121 S.Ct. 447, 453, 148 L.Ed.2d 333, 342–43 (2000).

> Just as in *Place*, an exterior sniff of an automobile does not require entry into the car and is not designed to disclose any information other than the presence or absence of narcotics. Like the dog sniff in *Place*, a sniff by a dog that simply walks around a car is "much less intrusive than a typical search."

*Id.* (quoting *Place*, 462 U.S. at 707, 103 S.Ct. at 2644, 77 L.Ed.2d at 121).

*Kyllo* specifically speaks to highly advanced technology that is not readily available to the general public used to search a *home*, arguably the most sacred of all places under the Fourth Amendment. *See Payton*, 445 U.S. at 585, 100 S.Ct. at 1379, 63 L.Ed.2d at 650 ("[T]he 'physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.'" (citation omitted)). Vehicles have not been given similar favored status where constitutional protections are concerned. Further, we are of the opinion that a drug sniffing dog is not "technology" of the type addressed in *Kyllo* to merit a divergence from the national and federal case law developed regarding vehicle dog sniffs.

 As such, we are persuaded by the following long-standing viewpoint. "Hav-

ing the trained dog sniff the perimeter of [defendant's] vehicle, which had been lawfully stopped in a public place, did not of itself constitute a search." *United States v. Jeffus,* 22 F.3d 554, 557 (4th Cir.1994). "[T]he airspace around the car is not an area protected by the Fourth Amendment." *Casey v. State,* 246 Ga.App. 786, 542 S.E.2d 531, 535 (2000). "Ohio courts have held that police need not have a reasonable suspicion of drug-related activity prior to subjecting an otherwise lawfully detained vehicle to a canine sniff." *State v. Rusnak,* 120 Ohio App.3d 24, 696 N.E.2d 633, 636 (1997) (citations omitted) ("If a vehicle is lawfully detained, the exterior sniff by a trained narcotics dog to detect the odor of drugs is not a search within the meaning of the Fourth Amendment to the United States Constitution.").

To date, all that we have required in Iowa is that the dog sniff be conducted within a reasonable amount of time from the initial, lawful stop and that the stop is not unduly prolonged without a sufficient basis. *State v. Aderholdt,* 545 N.W.2d 559, 563–64 (Iowa 1996); *accord United States v. Bloomfield,* 40 F.3d 910, 916–17 (8th Cir.1994). Here, the evidence is that the dog sniff occurred no more than a few minutes after Bergmann was pulled over.

Although a dog sniff is not a search, police cannot unduly prolong their detention of an individual to secure a drug dog or for any other reason without additional suspicion of wrongdoing that warrants expansion of the stop. *United States v. Jacobsen,* 466 U.S. 109, 125 n. 25, 104 S.Ct. 1652, 1662 n. 25, 80 L.Ed.2d 85, 101 n. 25 (1984) (holding that while the subjection "to a 'dog sniff' Search Term End test [is] reasonable, the seizure [can become] unreasonable [if] its length unduly intrude[s] upon constitutionally protected interests"). The fact that Officer Dill pulled Bergmann over for a mere traffic violation does not automatically invalidate the use of the drug dog. If, upon reasonable investigation surrounding the stop, the officer has a valid suspicion of other wrongdoing not the purpose of the stop, he can broaden the scope of the detention. We have held:

> Even if ... the trooper suspected drug trafficking from the outset, that alone would not invalidate an otherwise valid stop.
>
> Once a lawful stop is made, an officer can conduct an investigation "reasonably related in scope to the circumstances which justified the interference in the first place." "This reasonable investigation includes asking for the driver's license and registration, requesting that the driver sit in the patrol car, and asking the driver about his destination and purpose." If, as here, the detainees' responses or actions raise suspicions unrelated to the traffic offense, the officer's inquiry may be broadened to satisfy those suspicions.

*Aderholdt,* 545 N.W.2d at 563–64 (citations omitted) (quoting *United States v. Cummins,* 920 F.2d 498, 502 (8th Cir.1990); *Bloomfield,* 40 F.3d at 915).

In *Aderholdt,* we held that a fifty-minute detention to summon a drug dog and tow truck did not exceed the reasonable scope of the stop. *Id.* at 564. Aderholdt and his companions were pulled over for failing to wear their seatbelts and for having improperly tinted windows. While conversing with one of Aderholdt's companions in the back of the patrol car, the trooper became suspicious the companion was lying to him because the story he was telling the trooper "did not make sense." *Id.* at 561. He was very nervous and agitated, speaking in a quick and stuttery matter, and making excited gestures with his hands. Aderholdt also became very nervous when asked by the trooper if he could

search the car. At this point the trooper informed the men he was calling in a drug dog. We held that given these facts, it was reasonable for the trooper to broaden the scope of the detention. *Id.* at 564.

Although *Aderholdt* does not state a level of suspicion that is required, other jurisdictions have held that an initial traffic stop can be expanded beyond the scope only when there is *reasonable* suspicion of criminal wrongdoing. *United States v. Heir,* 107 F.Supp.2d 1088, 1094 (D.Neb. 2000) (holding that evasiveness, nervousness, fidgeting, and inattentiveness in the conglomerate may support further detention for a drug dog); *see also United States v. Ramos,* 42 F.3d 1160, 1163 (8th Cir.1994) ("A trained officer may properly infer from a collection of circumstances, no one of which itself indicates illegal activity, that further inquiry is appropriate.").

Other jurisdictions have also weighed in on this issue. The Tenth Circuit has held that where "the sniff and detention to accomplish it were supported by reasonable suspicion based on ... the extreme nervousness of the passengers and the inconsistent statements about destination," the fifteen-minute detention to wait for the drug dog was justified. *United States v. Hunnicutt,* 135 F.3d 1345, 1350 (10th Cir. 1998). Likewise, a defendant's

> agitated demeanor and conflicting accounts of their itinerary given by the vehicle's occupants then gave the trooper reasonable suspicion to enlarge the scope of his investigation. The arrival of a drug-detection dog on the scene within minutes of the stop afforded the officer the opportunity to "pursue[ ] a means of investigation that was likely to confirm or dispel [his] suspicions quickly, during which time it was necessary to detain the defendant."

*State v. Lopez,* 772 So.2d 90, 93 (La.2000) (alterations in original) (quoting *United*

States v. Sharpe,* 470 U.S. 675, 686, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605, 616 (1985)).

Further, some courts have been most interested in the length of the detention. In a similar Florida decision, the court noted and held:

> The stop was made at approximately 3:13 a.m. The drug dog arrived on the scene approximately 15 minutes later. The officer testified that he was still writing the ticket for the [traffic] violation when the dog arrived. We will not disturb the trial court's conclusion that the officer's testimony was credible and that the stop was not otherwise too lengthy.

*Sands v. State,* 753 So.2d 630, 632 (Fla. Dist.Ct.App.2000). In *United States v. Sharpe,* the Supreme Court held that the twenty-minute detention to wait for a better-trained narcotics officer to arrive was reasonable given that the on-scene officer thought he smelled marijuana around the stopped vehicle. *Sharpe,* 470 U.S. at 684–87, 105 S.Ct. at 1574–76, 84 L.Ed.2d at 614–16.

We also note the contrast shown by those cases where courts did not find it was reasonable to call a drug dog. In *United States v. Beck,* the Eighth Circuit invalidated the extension of the scope of the detention once the purpose for the initial stop had concluded. *United States v. Beck,* 140 F.3d 1129, 1140 (8th Cir.1998). The court recognized:

> Because the purposes of [the officer's] initial traffic stop of Beck had been completed by this point, [the officer] could not subsequently detain Beck unless events that transpired during the traffic stop gave rise to reasonable suspicion to justify [the officer's] renewed detention of Beck. Thus, we must consider whether [the officer] had a reasonable, articulable suspicion that Beck's Buick was

carrying contraband or that other criminal activity may have been afoot.

*Id.* at 1136 (citations omitted).

In *Beck*, upon his questioning, the officer did not receive any objectively reasonable facts to make him suspicious of other criminal activity. The answers provided by the defendant dispelled, rather than created, any further suspicion. For this reason, the Eighth Circuit held that the prolonged detention to wait for a drug dog was not reasonable. *Id.* at 1137. In the present case, the facts known to Officer Dill *did* reasonably create a suspicion to investigate further. Rather than dispel suspicion, Bergmann's answer created it by its verified untruthfulness. Dill's past experience with Bergmann, his recent presence in a known drug area with a reputed drug dealer, and Bergmann's nervousness being near the trunk of his car, combined to present a scenario more compelling than was present in *Beck* to make further detention reasonable in the present case.

In another case, the Florida Court of Appeals invalidated a prolonged detention where the officer asked the defendant more than fifty questions prior to writing the citation for speeding in order to allow time for the drug dog to arrive. *Maxwell v. State*, 785 So.2d 1277, 1279–80 (Fla.Dist. Ct.App.2001). The officer could point to no facts during the stop that made him suspicious that further criminal activity was afoot. Rather than write the speeding ticket, he engaged the defendant in conversation about his employment history, his marital status, and other questions that had nothing to do with the reason for the stop. The Florida court held that without reasonable suspicion that further investigation is necessary, a traffic stop cannot last any longer than the time it should take to write a citation. *Id.* If, however, a drug dog can be called within that time and sniff

the vehicle, there is no constitutional violation. *State v. Brown*, 691 So.2d 637, 638 (Fla.Dist.Ct.App.1997). In our case, the drug dog was called prior to the completion of the reason for the stop only after Officer Dill began to suspect additional illegality was afoot. Factors that created reasonable suspicion that further investigation was necessary were present and the drug dog arrived within minutes of a reasonable completion of the normal citation process.

Perhaps the most persuasive case comes from the Texas Court of Appeals. *Estrada v. State*, 30 S.W.3d 599 (Tex.App.2000). This court held:

Articulable facts and circumstances that come to an officer's attention during the course of a routine traffic stop may justify a continued detention and broader investigation. If the officer has a reasonable suspicion that the automobile contains narcotics, he may temporarily detain it to allow an olfactory inspection by a trained police dog.

*Id.* at 603 (citations omitted). The facts present in *Estrada* that validated the extension of the scope were nervousness of the passengers, confusing and contradictory statements made between the individuals, and an air freshener and carpet cleaner visible in the car. This court held that these factors were enough to provide reasonable suspicion that further investigation was necessary and justified. *Id.*

■ We find that our facts are equally persuasive given everything known to Officer Dill to satisfy the standard of reasonable suspicion. When the purpose for the initial stop has concluded, in order to expand the scope further, reasonable suspicion of criminal wrongdoing must be present. We believe this standard was met in *Aderholdt;* our holding now is consistent with that case.

■ The facts that supported reasonable suspicion for the pat down are the

same facts which support the reasonableness of expanding the scope of the stop to wait for a drug dog to arrive. Bergmann's past contact with Officer Dill, his lying, his nervousness, his presence in a drug area, and his contact with a drug dealer were all facts known to Dill when he called for the drug dog. As such, Dill had reasonable suspicion to expand the scope of the stop beyond the license plate violation. Moreover, Dill called the drug dog prior to concluding the purpose for the initial stop, so any prolonged detention was extremely minimal.

C. Search Incident to Dog Sniff

█ Contrary to what is suggested by Bergmann, this was not a search incident to citation held to be unconstitutional by *Knowles v. Iowa,* 525 U.S. 113, 117–18, 119 S.Ct. 484, 487–88, 142 L.Ed.2d 492, 497 (1998). When the dog was alerted by smelling the presence of narcotics, this provided police with probable cause to search the vehicle. Several cases have concluded that a reliable drug dog alert alone is enough to establish probable cause to search. *United States v. Booker,* 186 F.3d 1004, 1006 (8th Cir.1999); *$404,905.00 in United States Currency,* 182 F.3d at 647; *accord United States v. Sundby,* 186 F.3d 873, 876 (8th Cir.1999) ("A dog's positive indication alone is enough to establish probable cause for the presence of a controlled substance if the dog is reliable."); *United States v. Massie,* 65 F.3d 843, 849 (10th Cir.1995) (holding that when the dog was alerted to the presence of narcotics in the car, police had probable cause to search it). Here, no argument has been put forth to challenge the dog's reliability.

We have said that a warrantless search can be justified under these circumstances: (1) consent to search; (2) the presence of probable cause and exigent circumstances; (3) objects in plain view; or (4) search conducted incident to a lawful arrest. *State v. Kubit,* 627 N.W.2d 914, 918 (Iowa 2001); *State v. Cadotte,* 542 N.W.2d 834, 836 (Iowa 1996). Because the drug dog alert established probable cause, the police legally searched the car without a warrant under the probable cause plus exigent circumstances exception to the warrant requirement. *See State v. Predka,* 555 N.W.2d 202, 207 (Iowa 1996) ("Exigent circumstances existed because [the defendant's] car was mobile and its contents could have been lost if a search warrant had to be obtained."); *see also State v. Tucker,* 132 Idaho 841, 979 P.2d 1199, 1201 (1999) ("[A]n officer's investigation at the scene of a stopped automobile can ripen into probable cause as soon as a drug detection dog alerts on the exterior of the vehicle, justifying a search of the vehicle without the necessity of obtaining a warrant.").

█ This exception is also known as the automobile exception to the Fourth Amendment. *State v. Dawdy,* 533 N.W.2d 551, 556 (Iowa 1995) ("The automobile exception to the Fourth Amendment requirement of a search warrant is applicable if probable cause and exigent circumstances exist when the police stop an automobile."). This is implicated "when the facts and circumstances would lead a reasonably prudent person to believe the automobile contains contraband" and "when the automobile is mobile and the automobile's contents may never be found again if the police must obtain a warrant." *Id.* As both circumstances exist here, the search conducted falls within a recognized exception and did not violate the Fourth Amendment.

**AFFIRMED.**

All justices concur except STREIT, J., who takes no part.