**IN THE COURT OF APPEALS OF IOWA**

No. 13-0485
Filed May 14, 2014

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**SIMON LUTHER CROSS,**
      Defendant-Appellant.
_____

      Appeal from the Iowa District Court for Des Moines County, Michael J.

Schilling, Judge.

      Simon Cross appeals, contending trial counsel was ineffective in failing to

file a motion to suppress. **AFFIRMED.**

      Mark C. Smith, State Appellate Defender, and Nan Jennisch, Assistant

Appellate Defender, for appellant.

      Thomas J. Miller, Attorney General, Heather R. Quick, Assistant Attorney

General, Patrick C. Jackson, County Attorney, and Lisa Schaefer, Assistant

County Attorney, for appellee.

      Considered by Danilson, C.J., and Potterfield and McDonald, JJ.

**POTTERFIELD, J.**

Simon Cross appeals, contending trial counsel was ineffective in failing to file a motion to suppress. Because Cross has not established prejudice, his ineffective-assistance-of-counsel claim fails, and we affirm.

**I. Background Facts and Proceedings.**

The charges in this case stemmed from a burglary at a Henningsen Construction mobile asphalt plant located in Des Moines County, south of Burlington, Iowa. At about 3:30 a.m. on April 30, 2012, Duane Updike, the foreman for Henningsen Construction arrived at work and discovered that some of the buildings and vehicles had been broken into. He contacted law enforcement officers.

Signs of forced entry were observed at two buildings at the work site. At the control house—a trailer where controls for the machinery were located—the front door had been opened and the window on the door was broken. A cell phone booster, a computer, an air card, and a radio were missing from the control house. At the lab trailer/office, the door appeared to have been pried open. A computer and an air card were gone from the lab trailer. An end loader was broken into, and a CB radio and scanner were stolen from inside. There were two dump trucks on the site; CB radios were stolen from both. A tool box and a CB radio were stolen from the back of a Freightliner trailer. Someone had tampered with the window of the trailer. Weather-stripping had been peeled and removed on the wing window of two truck-trailers, leaving scratch marks.

Since it had rained throughout the night, the ground around the work site was wet and muddy. Law enforcement officers observed two separate sets of

footwear impressions leading from the buildings toward some railroad tracks. The officers followed the footwear impressions approximately 150-200 yards to where they crossed over the railroad tracks. There was an area near the railroad tracks by the woods where it appeared that a vehicle had pulled into the grass. A blue latex glove was spotted on the ground.

Based on Cross's previous involvement in similar burglaries, officers suspected he may be involved. Detective Eric Blodgett and Deputy Mark McIntrye went to Cross's house. While approaching Cross's house, the officers walked up to a car in the driveway; the car was registered to Nicole Cross, Cross's wife. The officers observed equipment that resembled some of the equipment stolen from the work site in the car.

The officers knocked on Cross's door. When Cross came to the door to speak with the officers (about forty-five minutes after the officers first attempted to raise him), Cross initially denied involvement in the burglary. The officers informed Cross of the stolen items they observed in the car. Cross stated he had been at Joshua VanSant's house the night before, and while there VanSant left the house alone for a short time. When VanSant returned, he gave Cross some of the stolen property. Cross gave the officers permission to search the vehicle.

Before searching the car, the officers went inside Cross's residence because Cross was in his boxers and needed to put pants on before coming outside. Cross's pants were covered in mud from the knees down. When asked about this, Cross claimed that the mud was from working in his yard the day before. While in the residence, the officers also observed a pair of boots covered in fresh mud. The tread pattern on Cross's boots was consistent with the tread

pattern from the imprint at the work site. When questioned about his boots, Cross claimed that he and VanSant had swapped boots the night before while Cross was at VanSant's residence. Cross stated that VanSant needed the boots because he only had flip flops at his own house. The boots were a size ten and one-half. It was later learned VanSant wore a size twelve shoe.

The officers also observed other electronics that appeared to be from the Henningsen work site in Cross's living room. When questioned about these other electronics, Cross claimed that the only other item he had from VanSant was an air card in his bedroom.

Back outside, the officers found surgical gloves and a cell phone booster in the trunk of the car. The serial numbers from the booster confirmed that this was stolen from the work site. After discovering the stolen property, the officers read Cross his *Miranda* rights. Before placing Cross in the patrol car, an officer patted Cross down and discovered a piece of weather stripping in Cross's right-back pocket consistent with the stripping of the truck-trailers. Cross claimed that VanSant put the weather stripping in his pocket because VanSant did not want anything with his fingerprints on it and Cross was supposed to dispose of the stripping.

Deputy McIntyre also took Cross's cell phone before transporting him to the station. Cross was attempting to send a text message to VanSant at the time. Deputy Blodgett then transported Cross to the station.

Meanwhile, other officers had located VanSant at his residence. Deputy McIntyre joined them there. VanSant was informed that Cross had implicated him in the burglary. VanSant was upset and slammed his cell phone down on

the floor, breaking it.  VanSant admitted to the officers that he was involved in the burglary.

In VanSant's bedroom, the officers located a computer from Henningsen Construction.  In VanSant's garage, the officers found toolboxes and a milk crate containing a lot of electronic equipment.  The officers seized those items as evidence.  VanSant was subsequently transported to the Des Moines County Sheriff's Office for further questioning.

Cross was interviewed at the sheriff's office.  He told the officers that VanSant had owed some drug debts and needed money fast.  Cross acknowledged being with VanSant and then leaving VanSant's residence with him in a vehicle.  Additionally, Cross said that he was aware of the items that the officers seized from VanSant's garage.  Cross indicated that he took a cell phone booster, an air card, and a mobile base unit from VanSant.  Cross later admitted that he still had a computer from Henningsen Construction at his residence.  After the interview, an officer went back Cross's residence to retrieve another computer and air card from the bedroom.

During his interview at the sheriff's office, VanSant admitted that he and Cross were involved in the burglary at the work site.  VanSant stated that on the night in question, Cross had come to see him at his residence.  Cross was dropped off there by his wife.  VanSant acknowledged that both of them decided to commit the burglary.  VanSant stated that they then drove to Henningsen Construction together.  VanSant said he was more of a "lookout" person because his hand was in a cast at the time.  VanSant indicated that both he and Cross wore blue surgical gloves.  He stated that Cross broke into the buildings and into

no more than five vehicles. The two of them subsequently loaded up the stolen property in the vehicle and left the scene. Afterward, Cross was picked up by his wife near VanSant's residence.

Cross was charged, as a habitual offender, with seven counts of third-degree burglary: count I related to the control house; count II, the lab/office; count III, the unoccupied, 2010 Volvo end loader; count IV, the 1999 Freightliner dump truck; count V, the 2007 Sterling dump truck; count VI, the 1998 Freightliner truck/trailer; count VII, the unoccupied, 2007 Freightliner truck/trailer.

At trial, Jesse Simmons, a Henningsen Construction employee, testified that he had observed Cross's vehicle driving by and through the construction area several times after the work site was established.

VanSant testified as a State's witness. VanSant testified that on the night of the burglary Cross came over to VanSant's mother's house with others, and they were drinking. Cross and VanSant eventually left to go driving around, and Cross suggested the two go to the Henningsen Construction work site. VanSant stated the two broke into various vehicles and buildings to steal electronics. They hoped to later sell the electronics. During the burglary, the two wore gloves Cross provided. VanSant had a cast on his arm. VanSant testified that after leaving the work site, the two stopped at Daniel Warth's residence.

Daniel Warth testified at trial that around midnight on the night of the burglary Cross and VanSant stopped over to his house. The two had mud all over their shoes. Cross was wearing boots. Cross and VanSant had a walkie-talkie, cell phone, laptop, and radio. Cross described "the specs" of the electronics he had in his possession to Warth.

The jury found Cross guilty of third-degree burglary on counts I, II, and IV; and of attempted burglary on count VII. He was acquitted on the remaining counts. Cross stipulated to previous convictions and was sentenced as a habitual offender.

On appeal, Cross contends trial counsel was ineffective in failing to file a motion to suppress the items seized when he was patted down before entering the police car.

## II. Scope and Standard of Review.

The right to assistance of counsel under the Sixth Amendment to the United States Constitution and article I, section 10 of the Iowa Constitution is the right to "effective" assistance of counsel. *State v. Ondayog*, 722 N.W.2d 778, 784 (Iowa 2006). We review constitutional claims de novo. *Id.* at 783.

## III. Analysis.

In order to prove counsel was ineffective, Cross must show by a preponderance of the evidence that counsel failed to perform an essential duty and he suffered prejudice as a result. *See State v. Maxwell*, 743 N.W.2d 185, 196 (Iowa 2008). The ineffectiveness claim fails if the defendant is unable to prove either element of this test. *Ondayog*, 722 N.W.2d at 784.

"To establish prejudice, the defendant must demonstrate the 'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Lane*, 743 N.W.2d 178, 183 (Iowa 2007) (quoting *Strickland v. Washington*, 466 U.S. 668, 694 (1984)).

Cross argues the pat-down search cannot be justified as a protective search because he had been cooperative and posed no threat to the officers.

And, even if the search was authorized for safety reasons, he contends the officer exceeded the permissible scope by reaching in to remove an item that was not a weapon. In addition, he maintains the officer was not authorized to take his cell phone. Cross argues the following should have been excluded: the contents of the text message on the cell phone seized by Deputy McIntyre, any mention the text message was to be sent by Cross to VanSant, and any conversations between the law enforcement officers and Cross about the items seized during the pat-down search.

Even accepting all of Cross's contentions, Cross cannot establish prejudice resulted from counsel's failure to file a motion to suppress. The evidence discovered before the allegedly illegal search would be admissible and can be considered under the prejudice prong. *See State v. Bergmann*, 633 N.W.2d 328, 333 (Iowa 2001) ("The fruit of the poisonous tree doctrine bars evidence found in subsequent searches only when the evidence was found by virtue of the first illegality."). Before the pat-down search, Cross was found in possession of items stolen from the work site. Gloves like the one found at the scene were found in his wife's vehicle; that search is not challenged by Cross. His clothing and boots were covered in mud. Moreover, Cross had already implicated VanSant. VanSant admitted his participation with Cross in the burglary. On the night of the burglary, VanSant had a cast on his right hand due to surgery he had had in March. We conclude that even without the objected to evidence, the remaining evidence is more than sufficient to support Cross's convictions. We therefore affirm.

**AFFIRMED.**