# IN THE COURT OF APPEALS OF IOWA

No. 18-0440
Filed January 9, 2019

**STATE OF IOWA,**
      Plaintiff-Appellee,

**vs.**

**MONTE ALLEN APFEL,**
      Defendant-Appellant.

_____

Appeal from the Iowa District Court for Black Hawk County, Kellyann M. Lekar (suppression) and Bradley J. Harris (trial), Judges.

Monte Apfel challenges his convictions of possession of methamphetamine with intent to deliver, possession of marijuana, possession of diazepam, unlawful possession of prescription drugs, and drug tax stamp violation. **AFFIRMED.**

Mark C. Smith, State Appellate Defender, and Robert P. Ranschau, Assistant Appellate Defender, for appellant.

Thomas J. Miller, Attorney General, and Louis S. Sloven, Assistant Attorney General, for appellee.

Considered by Tabor, P.J., and Mullins and Bower, JJ.

**BOWER, Judge.**

Monte Apfel appeals his convictions for five drug charges. On appeal, Apfel claims the district court erred in denying his motion to suppress. We find the traffic stop and subsequent investigation, dog sniff, and search did not violate Apfel's constitutional rights. We affirm the district court.

## I.     Background Facts & Proceedings

At 12:58 a.m. on July 29, 2016, law enforcement initiated a traffic stop of a vehicle after observing it cross the center line. When the officer informed the driver, Apfel, why the traffic stop was initiated, Apfel did not dispute the vehicle crossed the center line. His first reaction was "[W]ell, my car kinda pulls that way a little bit" and soon said he should have gotten the problem fixed, reiterating, "I know it pulls pretty hard that way."

Apfel told the officer he had purchased the vehicle the day before. Apfel had the vehicle title with him but no registration, proof of insurance, or current license plates. On the title, the seller information was filled out and dated July 27, but no information indicating the buyer, the vehicle's mileage, or a bill of sale was included.[1] Apfel was unable to identify or provide the contact information of the seller of the vehicle. The license plates on the vehicle were registered to a different vehicle owned by Apfel's wife. The officer began an investigation of the ownership status of the vehicle to determine if Apfel had a right to drive it.

A duffle bag was observed in the back seat, and Apfel provided a vague description of its contents. The officer requested consent to search the vehicle,

---

[1] On July 31, the officer confirmed with the seller the vehicle had been sold to Apfel.

and Apfel refused. A search on Apfel's driver's license revealed prior drug offenses. The officer called for a canine unit. The unit arrived while the officer continued to investigate the ownership of the vehicle. The officer talked on Apfel's cell phone with an acquaintance of Apfel who helped with the vehicle purchase. The officer requested dispatch make subsequent additional calls on the ownership while the officer checked if the car could stay in the driveway overnight after the invalid license plates were removed. At the same time the canine unit performed a dog sniff outside the vehicle.

The dog indicated at the open driver side window by trying to jump in the window and, when the officer let him in the vehicle, indicated at the dash. In the dash, officers found bottles of pills and a small zippered case containing methamphetamine, marijuana, a pipe, a scale, and a social security card for Apfel's ex-wife. The officer located notebooks in the glove compartment, one of which appeared to be a drug ledger. The duffle bag contained more drugs and paraphernalia. Apfel was arrested. The officers recovered two hundred diazepam tablets, ten tablets of alprazolam, eight bags of methamphetamine, and marijuana from the vehicle. The officers also removed over $1100 dollars in cash and jewelry from Apfel's person.

The State charged Apfel with five offenses: (1) possession of more than five grams of methamphetamine with intent to deliver (second offense), in violation of Iowa Code sections 124.401(1)(b)(7) and 124.411 (2016); (2) drug tax stamp violation (habitual offender), in violation of sections 453B.3 and .12; (3) possession of marijuana (third offense), in violation of section 124.401(5); (4) possession of

diazepam with intent to deliver, in violation of section 124.401(1)(d); and (5) unlawful possession of a prescription drug, in violation of section 155A.21.

Apfel filed a motion to suppress evidence obtained during the traffic stop. He made three claims: the officer's observation of his vehicle crossing the center line was not a sufficient basis for initiating a traffic stop; the extension of the traffic stop to wait for the canine officer was unconstitutional; and there was no probable cause for the canine search of the vehicle. After a hearing, the court denied his motion.

A jury trial was held in January 2018. The jury convicted Apfel on all five counts. Apfel appeals.

## II.     Standard of Review

"When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Brown*, 890 N.W.2d 315, 321 (Iowa 2017). We independently evaluate the totality of the circumstances on our review including evidence presented at the suppression hearing and evidence presented at trial. *State v. Tyler*, 867 N.W.2d 136, 152 (Iowa 2015). Because the district court has an opportunity to assess the credibility of witnesses, we give deference to but are not bound by the district court's factual findings. *In re Pardee*, 872 N.W.2d 384, 390 (Iowa 2015).

## III.     Motion to Suppress

**A.     Stop of the vehicle.**  Apfel claims the district court erred in finding the dash-cam video from the officer's patrol car shows his vehicle crossing the center line. On this question, the district court found, "State's Exhibit A shows the

Defendant's vehicle, prior to turning left, crossing the center line at least once, not merely touching the line. This establishes probable cause as the Defendant violated Iowa Code section 321.297(1), which requires that vehicles be driven on the right half of the roadway." The court noted without the crossing of the center line "reasonable suspicion would not have existed as Defendant Apfel did not weave, veer, or display erratic speed changes."

After reviewing the dash-cam video, we agree with the district court probable cause was established. The video shows Apfel crossing the center line at the same time he turns on his left turn signal, approximately one block before he turns left. He was not passing parked cars or any other obstruction making it necessary to drive left of the center line. *See* Iowa Code § 321.297. None of the other exceptions under section 321.297 apply. The traffic stop was justified because probable cause existed to believe a traffic violation had occurred.

**B.** **Extension of stop.** Apfel claims the traffic stop should have ended once the original purpose of the stop was completed and the officer did not have reasonable suspicion to extend the traffic stop. Apfel contends the officer should have let him leave without the vehicle once the officer determined the license plates did not match the vehicle and realized the ownership question would not be resolved that night.

A law enforcement officer making a valid traffic stop must terminate the stop when reasonable suspicion is no longer present. *State v. Coleman*, 890 N.W.2d 284, 285 (Iowa 2017). A traffic stop may not be extended when the underlying problem has been resolved. *Id.* at 301. If an additional violation is discovered during the valid traffic stop, an extension of the stop is justified. *See State v.*

*Coffman*, 914 N.W.2d 240, 252 (Iowa 2018) (finding the discovery of a violation relating to the vehicle registration provided further justification for the stop).

"[A]n officer 'may conduct certain unrelated checks during an otherwise lawful traffic stop' but 'may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual.'" *Pardee*, 872 N.W.2d at 393 (quoting *Rodriguez v. United States*, 575 U.S. ___, ___, (2015)). The critical question is whether the checks prolong the stop without reasonable suspicion. *See id.*

In this case, during the valid traffic stop, the officer requested the registration and insurance for the vehicle. This standard request gave rise to a question of the ownership of the vehicle. The officer also called dispatch to check Apfel's license, then requested a canine unit after discovering a history of drug offenses. The officer was still actively investigating an ongoing violation—the ownership of the vehicle and the wrong license plates on the vehicle—past the arrival of the canine unit. The period between the officer calling for the unit and the unit's arrival included a call initiated by Apfel to a person who facilitated the vehicle purchase. The officer and Apfel discussed why the officer needed proof Apfel had the right to drive the car, including Apfel's inability to provide any information about the seller. During the dog sniff search, the officer continued to investigate who owned the vehicle and determined whether the vehicle would need to be towed or if it could stay where it was parked. The length of the stop was a reflection of the investigation into the ownership of the vehicle and whether Apfel should be driving it; the stop was not prolonged to wait for the canine unit and conduct the dog sniff.

We find the ownership investigation was ongoing up until and beyond the time of the canine unit's response and dog sniff. The officer did not act in an unconstitutional manner in not allowing Apfel to leave the scene after discovering Apfel was driving a vehicle using another vehicle's license plates, having no proof of ownership besides a title he had not signed, and an inability to provide any information about the buyer or how Apfel obtained the vehicle. The officer did not unlawfully prolong the traffic stop to wait for the canine unit.

**C.      Search of the vehicle.**  Apfel claims the dog sniff of his vehicle was unconstitutional, stating it did not fall within any exception to the warrant requirement and the officer did not have a reasonable, articulable suspicion justifying a drug dog sniff of the vehicle.

Apfel identifies no legal support for his theory an open air dog sniff requires probable cause or a search warrant. To the contrary, "a dog sniff that occurs outside a vehicle is not a search under the meaning of the Fourth Amendment." *State v. Bergmann*, 633 N.W.2d 328, 334 (Iowa 2001). "Because it is not a search, neither probable cause nor reasonable suspicion must be present to justify it." *Id.* A trained dog's alert to the presence of illegal substances establishes probable cause to search the vehicle. *Id.* at 338. Here, the dog sniff outside the car was not a search, and the outside alert provided probable cause for the subsequent entry into and search of the vehicle.

In short, the initial stop arose out of a traffic violation. The initial traffic stop revealed valid questions regarding the ownership of the vehicle and Apfel's right to drive the vehicle which required immediate investigation. The investigation of the ownership and Apfel's rights relating to the vehicle and related questions about

whether to tow the vehicle were ongoing through the time the canine unit arrived and the dog sniff occurred. A dog sniff outside the vehicle is not a search within the meaning of the Iowa or federal constitutions. The dog's detection of controlled substances within the vehicle provided probable cause for the officers' search of the vehicle.

We affirm the district court's denial of Apfel's motion to suppress.

**AFFIRMED.**