# IN THE COURT OF APPEALS OF IOWA

No. 22-1505
Filed August 30, 2023

**STATE OF IOWA,**
    Plaintiff-Appellee,

**vs.**

**DASHAUN AVERY REDMOND,**
    Defendant-Appellant.
_____

Appeal from the Iowa District Court for Black Hawk County, Michelle M. Wagner, District Associate Judge.

Dashaun Redmond appeals his conviction for carrying weapons. **AFFIRMED.**

Martha J. Lucey, State Appellate Defender, and Josh Irwin, Assistant Appellate Defender, for appellant.

Brenna Bird, Attorney General, and Zachary Miller, Assistant Attorney General, for appellee.

Considered by Greer, P.J., and Schumacher and Badding, JJ.

**SCHUMACHER, Judge.**

Dashaun Redmond appeals his conviction for one count of carrying weapons. He challenges the denial of his motion to suppress, arguing that the search of his person violated his Fourth Amendment rights under the United States Constitution, as well as his rights under Article I, Section 8 of the Iowa Constitution. We determine the search was valid as a *Terry* pat-down and do not address other arguments urged by either Redmond or the State.[1] We affirm.

## I.      Facts and Prior Proceedings

Officer Woodward, senior detective of the Waterloo Violent Crime Apprehension Team, began his shift on November 7, 2020, armed with the knowledge that two "reports of shots fired" had been received by local law enforcement. The most recent report was received two days prior, the first report about a week before. Both incidents involved a black male driving an early 2000s tan Chevy Impala. During his shift that night, Officer Woodward observed a tan 2003 Chevy Impala with a defective license plate light pull into a parking lot of a liquor store known as a site for homicides, weapons violations, drug use, and drug sales. This location was about one mile from one of the previous shooting reports. The vehicle parked, and the driver appeared to be watching the officer. The driver of the vehicle then exited back onto the street without entering the store. Officer Woodward observed that the driver of the vehicle, a black male later identified as Dashaun Redmond, appeared to be avoiding him.

---

[1] *Terry v. Ohio*, 392 U.S. 1, 17 (1968).

Officer Woodward followed the vehicle and initiated a traffic stop based on the defective license plate light. When he approached the vehicle, he saw an open bottle of tequila in the front passenger seat and smelled the odor of marijuana. The officer recognized the driver as he had previous encounters with Redmond, knew him to have gang affiliations, and also had knowledge that Redmond previously was in vehicles where drugs and weapons were recovered.[2] Redmond immediately lit a cigarette, which the officer believed was an attempt to cover the smell of the marijuana. Officer Woodward testified that Redmond appeared nervous. Redmond's hands were shaking when he looked for his license and insurance, and he stammered when answering questions. Redmond denied avoiding the officer.

When Officer Woodward asked Redmond to step out of the vehicle to show him the equipment defect, Redmond initially refused. He later exited at Officer Woodward's insistence and assurance that he would not receive a ticket for the defective license plate light. Officer Woodward had Redmond place his hands on the roof of the vehicle and conducted an "officer safety pat down." During this pat down, Officer Woodward discovered a Glock 43, a smaller handgun, which had been reported as stolen.

At the suppression hearing, Officer Woodward testified that his basis for the pat down was:

> [A]ll the prior knowledge that I know of him and people he associates with, his ties to known gangs known for several weapons violations and guns, this vehicle and the driver matched the description to a T

---

[2] Officer Woodward testified that in his work with the team in the last six years, 400 firearms have been seized in Waterloo, and that they primarily deal with the "local hybrid gang guys here in the city of Waterloo."

in reference to two shootings that happened two days prior and about a week, week and a half before. Also his nervousness to signs. He never was nervous before. I've gotten him out numerous times obviously to search his vehicle and search him. He never hesitated. . . . At that point I believed that there was much more than just a simple marijuana possession or a liquor bottle. I believe that he was armed at that time due to not wanting to exit the vehicle.

Redmond was arrested and later charged with one count of carrying weapons and one count of theft in the fourth degree. *See* Iowa Code §§ 724.4(1), 714.1(4), 714.2(4) (2020). Redmond pled not guilty and moved to suppress evidence, claiming that the search and seizure conducted by Officer Woodward violated his Fourth Amendment Rights, as well as his state constitutional rights.[3] The district court denied the motion. Redmond waived his right to a jury trial and stipulated to a bench trial on the minutes of testimony. Redmond was found guilty of carrying weapons in violation of Iowa Code section 724.4(1), an aggravated misdemeanor, but was acquitted on the theft charge. Redmond timely appealed.

## II. Standard of Review

"When a defendant challenges a district court's denial of a motion to suppress based upon the deprivation of a state or federal constitutional right, our standard of review is de novo." *State v. Coffman*, 914 N.W.2d 240, 244 (Iowa 2018) (quoting *State v. Storm*, 898 N.W.2d 140, 144 (Iowa 2017)). "We examine the whole record and 'make an independent evaluation of the totality of the circumstances.'" *Id.* (quoting *Storm*, 898 N.W.2d at 144 ). "Each case must be evaluated in light of its unique circumstances." *Id.* (quoting *State v. Kurth*, 813 N.W.2d 270, 272 (Iowa 2012)).

---

[3] *See* U.S. Const. amend. IV; *see also* Iowa Const. art. I, § 8.

### III.    Analysis

Redmond challenges the application by the district court of two exceptions to a warrantless search: the automobile exception and the exception established in *Terry*, 392 U.S. at 28.  The State raises the search-incident-to-arrest exception, claiming that the probable cause arising from the open liquor bottle and marijuana odor justified Officer Woodward's search.  We conclude this search to be valid as a *Terry* pat-down and do not address other arguments urged by either Redmond or the State.[4]

The district court found the search of Redmond's person to be valid under the *Terry* exception.  "In *Terry*, the Supreme Court emphasized that even a frisk for weapons, which takes only a few seconds, is 'a serious intrusion upon the sanctity of the person, which may inflict great indignity and arouse strong resentment.'"  *State v. Pals*, 805 N.W.2d 767, 775 (Iowa 2011) (quoting *Terry*, 692 U.S. at 17).  But the *Terry* court also recognized the weighty interest of a police officer in "taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him."  *Terry,* 392 U.S. at 23.

As the *Terry* court explained:

> When an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and

---

[4] The district court relied on the automobile exception, but since that doctrine does not extend to the search of a person, it does not apply.  *See State v. Stevens*, 970 N.W.2d 598, 603 (Iowa 2022) (stating that the probable cause that justifies the search of the car does not extend to the passenger); *see also State v. Horton*, 625 N.W.2d 362, 365 (Iowa 2001); *Wyoming v. Houghton*, 526 U.S. 295, 303 (1999). We also note that the only argument addressed by the State in their briefing is the search incident to arrest exception.  But because the *Terry* pat-down was addressed by Redmond and the district court, we rely on such in this opinion.

presently dangerous to the officer or to others, it would appear to be clearly unreasonable to deny the officer the power to take necessary measures to determine whether the person is in fact carrying a weapon and to neutralize the threat of physical harm.

*Id.* at 24.

But it is clear from *Terry's* companion case, *Sibron v. New York,* that "[t]he police officer is not entitled to seize and search every person whom he sees on the street or of whom he makes inquiries." 392 U.S. 40, 64 (1968). Before an officer "places a hand on the person of a citizen in search of anything, he must have constitutionally adequate, reasonable grounds for doing so." *Id.* The *Sibron* court then said: "In the case of the self-protective search for weapons, [the officer] must be able to point to particular facts from which he reasonably inferred that the individual was armed and dangerous." *Id.*

Our supreme court has encountered a similar fact pattern to the instant proceedings. In *State v. Bergmann*, the supreme court noted an officer may have reasonable suspicion to justify a pat-down based on the defendant's presence in a known narcotics-dealing area "coupled with other factors like flight upon seeing police, nervousness, evasiveness or lying, past experience with the suspect, etc." 633 N.W.2d 328, 333 (Iowa 2001). In *Bergmann*, the officer observed the defendant parked in an alleyway in "an area notorious for drug activity" with "a well-known narcotics dealer . . . standing next to the passenger side of the car." *Id.* at 330. The drug dealer immediately left upon noticing the officer, and the defendant began to drive away, at which point the officer noticed the defendant's license plate light was not lit and decided to pull him over. *Id.* Upon making contact with the defendant, the officer recognized him from an arrest he made a few years prior

involving possession of a handgun and marijuana. *Id.* The officer asked the defendant to step out of the car to show him the unlit license plate, and the officer noticed the defendant "was acting anxious and impatient." *Id.* The defendant declined to give consent to search the vehicle, so the officer called the canine unit. *Id.* at 330–31.

While the officer waited for the canine unit to arrive, he patted down the defendant for weapons and looked under the driver's seat for a weapon, which is where he had found a weapon in his prior arrest of the defendant, but the officer found nothing. *Id.* at 331. The canine unit arrived "within minutes," and the dog indicated it smelled a controlled substance, leading the officers to search the entire vehicle and find marijuana inside. *Id.* The supreme court determined the officer had reasonable suspicion to pat-down the defendant for weapons based on the combination of the defendant's presence in a known drug area alongside a drug dealer, the defendant's flight upon seeing the police when he was parked, the defendant's nervousness and evasiveness, and the officer's past experience with him. *Id.* at 333.

Our supreme court also highlighted *Bergmann* in a recent decision, concluding it was instructive, which led the court to find an officer had reasonable suspicion to order the defendant out of the vehicle. *State v. Price-Williams*, 973 N.W.2d 556, 563 (Iowa 2022) (discussing *Bergmann*, 633 N.W.2d at 333); *see also State v. Riley*, 501 N.W.2d 487, 489 (Iowa 1992) ("[A]n officer may [also] make a protective, warrantless search of a person when the officer, pointing to specific and articulable facts, reasonably believes under all the circumstances that the suspicious person presents a danger to the officer or to others.").

We likewise determine similar facts justify this *Terry* pat-down, including Redmond's similarity to the description from two previous shootings that had occurred in the area, Redmond's association with a gang known for dealing drugs and weapons, and Redmond's nervousness during the stop.[5]  Officer Woodward testified that the area where Redmond parked was a high crime area.  *See Adams v. Williams*, 407 U.S. 143, 147–48 (1972) (finding that suspicious behavior paired with a high crime area contributed to the officer's fear for his safety); *see also Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) *(*also citing a high crime area as a consideration in the officers' analysis when paired with fleeing).  While Redmond argues that these factors identified by Officer Woodward were not specific to him, we disagree.

We conclude Officer Woodward was justified in believing that Redmond, who was at close range, may be armed and could be presently dangerous to himself.  And we also conclude it would be clearly unreasonable to deny the officer the power to take necessary measures to determine whether Redmond was in fact carrying a weapon and to neutralize the threat of physical harm.  The *Terry* pat-down did not violate Redmond's constitutional rights, state or federal, and we affirm the denial of the motion to suppress.

**AFFIRMED.**

---

[5] We eliminate the positioning of Redmond's body relied on in part by the district court from our analysis.  The positioning of the body occurred during the search.  As such, it cannot be used to create the reasonable belief that must be present *before* the search.  *United States v. Di Re*, 332 U.S. 581, 595 (1948) ("We have had frequent occasion to point out that a search is not to be made legal by what it turns up.")