785 So.2d 1277 (2001)
Rusty L. MAXWELL, Appellant,
v.
STATE of Florida, Appellee.
No. 5D00-76.
District Court of Appeal of Florida, Fifth District.
June 8, 2001.
*1278 Donald R. West, Orlando, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Patrick Krechowski, Assistant Attorney General, Daytona Beach, for Appellee.
THOMPSON, C.J.
Rusty Maxwell appeals the trial court's denial of his motion to suppress on the ground that the stop was longer than required for the officer to issue him a written warning for speeding. After watching the video tape, reading a transcript of the suppression hearing and reviewing the evidence in the light most favorable to the state, we reverse.
Deputy King testified at the suppression hearing that he was working in the Special Investigations Division, Narcotics, when he saw Rusty Maxwell. King recalled that at approximately 7:19 p.m., while he was patrolling the Florida Turnpike as part of a drug interdiction unit, he clocked Maxwell with a radar unit at 75 miles per hour in a 70 mile per hour zone. King stopped Maxwell and, over his PA system, asked him to step to the rear of his vehicle with his driver's license. Maxwell complied and gave King his driver's license. Deputy King asked Maxwell for his vehicle registration but Maxwell was unable to produce it. When Maxwell first approached him, King started writing a warning citation telling Maxwell he was doing so because the violation was minor. They talked about where Maxwell had been that day. Maxwell said he was coming from work. He said that he worked in Orange County but that he lived in Brevard County. King walked up to Maxwell's vehicle while his supervisor, who had appeared on the scene a minute or two into the stop, watched Maxwell. King testified that for safety reasons, he never approaches a vehicle with his back to the driver unless another officer is on the scene. King looked at the vehicle identification number on the dashboard and at the license plate. He ran a check through a teletype to confirm that the license plate and the vehicle identification number were valid.
King asked Maxwell when he had last smoked marijuana. King testified that this was a question commonly asked by officers to detect any signs of deception. King also asked Maxwell if he had consumed any beer because he had detected a faint odor of alcohol. King additionally asked Maxwell about tattoos; he generally does if he sees one. He looked up the statutes for speeding and for failing to display a vehicle registration in the Florida State Taska Handbook.[1] He was uncertain *1279 of the new procedure concerning the latter violation so he did not issue Maxwell a citation. King testified that policy generally does not allow an officer to issue a speeding ticket unless the driver's speed exceeds 6 miles per hour over the posted speed limit; King merely issued Maxwell a written warning for speeding. He wrote the warning citation during his conversation with Maxwell. A K-9 appeared and circled King's vehicle. The dog alerted to the presence of illegal narcotics in Maxwell's car. The deputies searched the car and a bag containing a cigarette pack filled with 35.5 grams of marijuana was confiscated.
The Florida Supreme Court has held that unless there is a reasonable suspicion of criminal activity, an officer may not detain a vehicle any longer than is necessary to issue the citation. Thomas v. State, 614 So.2d 468 (Fla.1993); Cresswell v. State, 564 So.2d 480 (Fla.1990). Here, Deputy King's questioning was purposeless unless its purpose was a fishing expedition and a delaying tactic to allow time for the K-9 unit to arrive. King testified that there were no suspicious actions by Maxwell at any time during the stop. During his conversation with Maxwell, King asked Maxwell about matters which had nothing to do with the citation. King asked where Maxwell had worked. Maxwell talked about working in Texas and about law enforcement in Texas; he talked about his marital status, his son and about his work for an electrical company. Deputy King asked over 50 questions during this traffic stop. Many of the questions involved drugs or weapons: Do you have any drugs in the car? When was the last time you used marijuana? Have you ever been arrested for drugs? Has anyone been in your car recently with drugs? Do you object to a search of your car?[2] Is there any reason a drug dog would alert to drugs if it walked around your car? Do you have any objection to the drug dog walking around your car? Do you have any guns in your car? Have you had any firearms violations? During this time, King made no attempt to finish writing the ticket although he was aware two minutes into the stop that Maxwell did not have the registration. King stopped Maxwell at 6:14 p.m. Though he commenced writing the traffic ticket as he questioned Maxwell, the second officer did not begin to run the tag information until 6:25 p.m., 11 minutes after the stop. He received a response within minutes confirming that the vehicle was properly registered. Moreover, as previously noted, King failed to testify as to any suspicious conduct by Maxwella critical link in establishing a basis for Maxwell's continued detention.
The state recognizes that a traffic stop to issue a citation must last no longer than the time it takes to write the citation. See Cresswell. However, the state contends that this court has held that the completion of a traffic citation is not the only determinative factor during a traffic stop. If the officer has requested information which is outstanding, and a K-9 unit arrives before the information is obtained within a reasonable time, the traffic stop should not be considered complete. State v. Brown, 691 So.2d 637 (Fla. 5th DCA 1997). In Brown, the driver of the vehicle was not the owner. Judge Harris wrote that the officer had a right and a responsibility "to run the tag through the computer." Judge Harris concluded that the traffic stop would end when the information was received. If the K-9 arrived while the officer was writing the ticket, and the delay was not unreasonable, the K-9 sniff was valid. Brown at 638.
*1280 In the instant case, on the video tape authenticated by Deputy King, the majority of the time he is questioning Maxwell about matters which had nothing to do with issuance of a traffic citation. Had Deputy King started and completed his traffic duties, the K-9 would not have arrived before Maxwell departed. Brown does not control a case where the issuance of a ticket was delayed in order to ask questions about irrelevant matters. See McNeil v. State, 656 So.2d 1320 (Fla. 5th DCA 1995). See also Ikner v. State, 756 So.2d 1116 (Fla. 1st DCA 2000); Rouse v. State, 643 So.2d 696 (Fla. 1st DCA 1994). We reverse the trial court's order denying King's motion to suppress.
REVERSED.
COBB, J., concurs.
SAWAYA, J., concurs specially, without opinion.
NOTES
[1] The handbook is a digest of the Florida criminal statutes. It lists the commonly used name for the statute, the statute number and a brief synopsis of the statute.
[2] Maxwell objected to a search of his car.