817 So.2d 884 (2002)
Gregg ELDRIDGE, Appellant,
v.
STATE of Florida, Appellee.
No. 5D01-2256.
District Court of Appeal of Florida, Fifth District.
May 3, 2002.
Rehearing Denied June 4, 2002.
*885 James B. Gibson, Public Defender, and Barbara C. Davis, Assistant Public Defender, Daytona Beach, for Appellant.
Robert A. Butterworth, Attorney General, Tallahassee, and Allison Leigh Morris, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, J.
Gregg Eldridge appeals the order denying his motion to suppress. He entered a no contest plea to possession of more than 20 grams of marijuana after the State agreed that the ruling on the suppression motion was dispositive. Eldridge argues that the cannabis was discovered in his vehicle pursuant to an illegal detention and thus should have been suppressed. We agree and reverse.
The evidence and testimony presented at the suppression hearing revealed that the arresting officer pulled Eldridge over with the intent of issuing him a traffic citation after observing Eldridge block an intersection. The officer questioned Eldridge about his destination and address. Eldridge initially indicated his destination was West Palm Beach but was unable to *886 give an address, explaining that he was just moving there. He later stated that he was on his way to Virginia. Overall, he provided three different addresses. During the questioning, Eldridge started stuttering and sweating; the officer testified Eldridge got "a little excited" and asked the officer to hurry up.
The officer's initial check of Eldridge's driver's license revealed it was valid but, as the officer began writing the citation for blocking the intersection, the dispatcher called back on the radio to inform the officer that she had checked the license in Virginia and had found that Eldridge's Virginia license had been suspended. The officer called the Department of Highway Safety and Motor Vehicles (DMV) to try and determine if Eldridge's license was suspended in Virginia and if so, why the license was valid in Florida. When DMV informed the officer that the Virginia license was suspended, the officer had Eldridge step out of his vehicle and directed him to sit in the back of the patrol car while the officer continued to investigate the status of his license. While dealing with the DMV regarding the licensing issue, the officer called for a canine back-up. This call was made about 15 minutes after Eldridge was stopped. A second officer arrived with the dog about 10 minutes after being called. As the dog search was being conducted (which took 15-20 minutes), the DMV informed the first officer that Eldridge had been issued a Florida license in error. It was not certain whether the error was by the DMV or whether Eldridge had used a false affidavit to get the Florida license.
Eldridge was asked by the officer if he would consent to a search of his vehicle, but Eldridge refused. However, the dog subsequently alerted on the rear of the car and a search uncovered marijuana. Eldridge was issued a ticket for driving on a suspended license and for blocking the roadway. He was also arrested for drug possession.
At the suppression hearing, defense counsel introduced a certified copy of Eldridge's driving record showing that his license had been issued three weeks before the stop. There was no evidence that the license had been wrongfully obtained, nor was there any evidence that the Virginia license had ever been suspended. The traffic infractions were dismissed at the suppression hearing.
At the conclusion of the hearing, the trial court entered an order denying Eldridge's suppression motion based upon its finding that the length of the detention was reasonable "because of the confusion dealing with the Defendant's driver's privilege." Eldridge was adjudicated guilty and sentenced to 24 months' DOC. In these proceedings, Eldridge asserts that the length and scope of the detention exceeded what was reasonable to issue him a citation and that the officer did not have reasonable suspicion of criminal activity to support detaining him beyond that time. Specifically, Eldridge contends that the officer relied on erroneous information from the DMV regarding the validity of his license and that this erroneous information resulted in an illegal detention. Thus he contends that the trial court erred in denying his motion to suppress.
The standard of review this court must apply in reviewing the trial court's ruling on a motion to suppress requires us to determine whether the factual findings are supported by competent, substantial evidence. Young v. State, 803 So.2d 880 (Fla. 5th DCA 2002). We must construe all of the evidence, and reasonable inferences therefrom, in a manner most favorable to upholding the trial court's decision. Id. However, we must review de novo the trial court's application of the law to the *887 facts. Id. The facts of the instant case are not in dispute because, as the trial court found, the length of Eldridge's detention was caused by the confusion in dealing with his driver's privilege. The issue we must decide is whether the trial court properly applied the law to the facts of the instant case in holding that the length of the detention was reasonable and the canine search conducted during that time was valid.
If a driver is stopped for the commission of a traffic infraction, he or she may be subjected to a canine search of the exterior of the vehicle so long as it is done within the time required to issue a citation. Maxwell v. State, 785 So.2d 1277 (Fla. 5th DCA 2001) (citing Cresswell v. State, 564 So.2d 480 (Fla.1990)); Welch v. State, 741 So.2d 1268 (Fla. 5th DCA 1999). If a properly trained police dog alerts to the presence of illegal drugs during this time period, the officer will have probable cause for a search. Maxwell.
The State contends that the officer was attempting to obtain information about Eldridge's driver's license and that it was appropriate for him to detain Eldridge until that information was obtained. This court has held that the time to issue a citation should last no longer than is necessary to write the citation and, when necessary, to make the license, tag, insurance and registration checks as long as that information can be obtained within a reasonable period of time. See State v. Brown, 691 So.2d 637, 638 (Fla. 5th DCA 1997) (holding that when the driver admits that he is driving a vehicle owned by someone not present, the officer may run the tag number through the computer and "the traffic stop should not be considered completed until such information, if it can be obtained within a reasonable period, is returned."); see also State v. Robinson, 756 So.2d 249 (Fla. 5th DCA 2000). However, if the DMV provides erroneous information to an officer and the officer stops and detains a driver based on that erroneous information, the exclusionary rule will bar admission of evidence seized as a result of the search incident to that arrest.[1]Shadier v. State, 761 So.2d 279 (Fla.), cert. denied, 531 U.S. 924, 121 S.Ct. 298, 148 L.Ed.2d 240 (2000).[2] Finding that the DMV is "an integral part of law enforcement in the State of Florida," the court in Shadier explained:
Surely, the Department of Highway Safety, above all others, will consistently strive to see that no mistakes are made and that no citizen is wrongfully subjected *888 to an arrest or search predicated upon a mistake. That is, after all, the net effect of our ruling, to recognize that the government had no right, because of a mistake by the Department of Highway Safety, to seize and search one of its citizens. In the end, the government is discouraged from making such mistakes, and is only deprived of what it had no right to in the first instance.
761 So.2d at 286.
Taking the evidence and all reasonable inferences therefrom in the light most favorable to upholding the trial court's ruling, it is clear that Eldridge was seized and placed in the back of the patrol car based on erroneous information supplied to the officer by the DMV concerning the status of Eldridge's license. The only authority the officer had was to issue a traffic citation for road blocking, which would not justify the prolonged detention that occurred before Eldridge's actual arrest. We find that the continued detention of Eldridge while the officer was dealing with the DMV's erroneous information allowed Eldridge to be subjected to a search where one otherwise would not have occurred. Had the officer written the citation without the delay caused by the DMV's erroneous information, Eldridge would have been on his way long before the canine unit ever arrived. Thus, under these facts, "the government had no right, because of a mistake by the Department of Highway Safety, to seize and search one of its citizens." Shadier, 761 So.2d at 286. Therefore, we conclude that because Eldridge was "wrongfully subjected to an arrest or search predicated upon a mistake" made by the DMV, an arm of law enforcement, the marijuana found during the search must be excluded pursuant to Shadier. See also State v. Murphy, 793 So.2d 112 (Fla. 2d DCA 2001); Bruno.
The State asserts that even if the citation should have been completed before the canine unit arrived, the officer had a reasonable suspicion that illegal activity was afoot which justified the detention of Eldridge. Detentions of individuals may extend past the time required for writing a citation if the officer has a reasonable suspicion, based on articulable facts, that criminal activity was committed or was about to be committed. State v. Kindle, 782 So.2d 971 (Fla. 5th DCA 2001). However, an officer needs more than a mere hunch before he can detain a suspect past the time reasonably required to write a citation. Cresswell v. State, 564 So.2d 480 (Fla.1990). Citing Terry v. Ohio, 392 U.S. 1, 27, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the supreme court in Cresswell emphasized that reasonable suspicion is something less than probable cause, but more than a hunch. For an appellate court to determine whether an officer had reasonable suspicion, the appellate court must examine the totality of the circumstances to see whether the officer had a "particularized and objective basis for suspecting the particular person stopped of criminal activity." Cresswell, 564 So.2d at 482 (quoting United States v. Cortez, 449 U.S. 411, 417-18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981) (citations omitted)).
In the instant case, the facts the State cites as evidence of criminal wrongdoing are Eldridge's nervousness upon being stopped, his failure to provide a specific street address for his residence, and his possession of a large roll of $100 bills in his pocket. We conclude that this evidence does not establish reasonable suspicion on the part of the officer to detain Eldridge past the time reasonably necessary to issue a citation. The officer stopped Eldridge for a traffic infraction and did not testify that he had any suspicion that criminal activity was afoot. In *889 fact, he testified that he "just felt like [Eldridge] was lying and he had something to hide." This is no more than a hunch. The deputy admitted that he was acting on a "feeling," which did not justify Eldridge's prolonged detention.
In summary, we conclude that the trial court erred in ruling that the time of detention was reasonable. Moreover, the officer did not have reasonable suspicion that criminal activity was afoot to detain Eldridge any longer than necessary to write the traffic citation.
Accordingly, we reverse the order denying the motion to suppress and remand with directions to discharge Eldridge.
REVERSED with directions.
GRIFFIN, J., concurs.
ORFINGER, R.B., J., concurs and concurs specially, with opinion.
ORFINGER, R.B., J., concurring and concurring specially.
Because I am obliged to follow the supreme court's holding in Shadier v. State, 761 So.2d 279 (Fla.), cert. denied, 531 U.S. 924, 121 S.Ct. 298, 148 L.Ed.2d 240 (2000), I concur with the court's opinion. However, if not so obliged, I would adopt the view expressed in the Shadler dissent authored by Justice Wells.
In my opinion, the Division of Driver Licenses is an administrative, and not a law enforcement agency. As such, I believe Arizona v. Evans, 514 U.S. 1, 115 S.Ct. 1185, 131 L.Ed.2d 34 (1995) supports the trial judge's conclusion that the length of time Eldridge was detained was reasonable. That conclusion is shared by many other courts. See Commonwealth v. Wilkerson, 436 Mass. 137, 763 N.E.2d 508 (2002) (erroneous information from registry of motor vehicles provided probable cause for defendant's arrest); State v. Lanoue, 156 Vt. 35, 587 A.2d 405 (1991) (incorrect information provided by Department of Motor Vehicles not chargeable to law agency); State v. Ewoldt, 448 N.W.2d 676, 678 (Iowa Ct.App.1989) (officers could not know, or be reasonably expected to know, that information provided by Department of Public Safety and Transportation was inaccurate).
I believe a careful analysis of the duties of the Division of Driver Licenses, when measured against the Supreme Court's holding in Evans, support the trial judge's ruling. However, since Shadier is the law of Florida, I concur.
NOTES
[1] The exclusionary rule provides that "[w]hen an individual is unreasonably seized, any evidence obtained as a result of the seizure must be suppressed." Bowen v. State, 685 So.2d 942, 944 (Fla. 5th DCA 1996) (citing Popple v. State, 626 So.2d 185 (Fla.1993)).
[2] The State asserts that Shadier does not apply to the instant case because the initial stop of Eldridge was made for the purpose of issuing him a traffic citation and was not based on erroneous information provided by the DMV as was the case in Shadier. We find this to be a distinction without a difference. See State v. White, 660 So.2d 664 (Fla.1995); Bruno v. State, 704 So.2d 134 (Fla. 1st DCA 1997), approved in part, Shadier. White and Bruno were cited in Shadier with approval and in each case, the defendant was initially stopped for a traffic citation and a subsequent check with the DMV revealed erroneous information that led to their arrest and search. What is important in the instant case is that because of erroneous information provided by the DMV, Eldridge was detained far longer than necessary to issue the citation to him which provided the opportunity for the canine search. Because the detention extended past that period, the evidence obtained from the canine search must be suppressed unless the officer had reasonable suspicion that criminal activity was afoot. As discussed seriatim, the officer did not have reasonable suspicion under the facts of the instant case.