869 So.2d 750 (2004)
Zarek L. WILLIAMS, Appellant,
v.
STATE of Florida, Appellee.
No. 5D02-2845.
District Court of Appeal of Florida, Fifth District.
April 8, 2004.
Joerg F. Jaeger of Jaeger & Blankner, Orlando, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Rebecca Rock McGuigan, Assistant Attorney General, Daytona Beach, for Appellee.
SAWAYA, C.J.
Zarek L. Williams appeals the judgment and sentences entered in accordance with a jury verdict finding him guilty of trafficking in 400 grams or more of cocaine, possession of a firearm in the commission of a felony, carrying a concealed firearm, and possession of drug paraphernalia. Williams argues that because the charges stem from an unreasonably prolonged traffic stop, the trial court erred in denying his motions to suppress. Specifically, Williams raises two issues that have merit: 1) the initial stop exceeded the time necessary to write the citation; and 2) Williams was illegally detained after he was issued the citation. We agree and reverse.
*751 While on routine patrol, the arresting officer stopped Williams at 7:38 p.m. for a window tint violation and an obscured tag.[1] A minute-and-a-half later, the officer requested back-up. Four minutes after the stop, the officer requested a drug dog, which arrived at 8:13 p.m. Ten minutes after the stop, the officer ran Williams' date of birth through the teletype and immediately received a response that no warrants were outstanding for Williams. Thirty-five minutes after the stop, the officer issued Williams a citation for the window tint violation. The record reveals that the citation the officer issued to Williams had been partially filled out before the stop even took place.[2] After Williams was handed the citation and his driver's license, he was asked to step to the median so the drug dog could sweep the car. The dog alerted and Williams was arrested.
Williams claims that he was detained far longer than necessary for the officer to issue the citation and, therefore, the search of his vehicle via the drug dog was improper. Williams notes that there is no evidence that the officer had any basis for suspecting criminal activity when he stopped Williams or when issuing the citation to him. Therefore, Williams claims the trial court erred in denying his motion to suppress. We agree. An individual who is stopped for the commission of a traffic infraction may be subjected to a canine search of the exterior of the vehicle so long as it is done within the time required to issue a citation. Eldridge v. State, 817 So.2d 884 (Fla. 5th DCA 2002); Maxwell v. State, 785 So.2d 1277 (Fla. 5th DCA 2001) (citing Cresswell v. State, 564 So.2d 480 (Fla.1990)); Welch v. State, 741 So.2d 1268 (Fla. 5th DCA 1999). In Eldridge, we further explained that the time to issue a citation "should last no longer than is necessary to write the citation and, when necessary, to make the license, tag, insurance and registration checks as long as that information can be obtained within a reasonable period of time." 817 So.2d at 887 (citations omitted).
In the instant case, it took thirty-five minutes for the officer to obtain the necessary information and write the citation. We conclude, based on the facts and circumstances of this case, that this time far exceeded that which was necessary to issue the citation to Williams. Because Williams was illegally detained at the time the canine search began, the search was improper, and the drugs, paraphernalia *752 and firearm were illegally seized and therefore inadmissible in evidence. Eldridge; Maxwell. Hence, the trial court erred in denying the motion to suppress.
Moreover, we cannot ignore the fact that the officer actually had completed the citation and handed it to Williams before the drug dog performed the search of the vehicle. Even if it was reasonable to take thirty-five minutes to obtain the necessary information and issue the citation, the stop had ended before Williams was directed to step to the median, citation in hand, so the dog could proceed with the search. Because the stop had ended before the drug search by the dog began and because the officer had no basis for suspecting criminal activity, the continued detention of Williams was illegal. Accordingly, we reverse the order denying the motion to suppress and remand with directions to discharge Williams.
REVERSED AND REMANDED.
ORFINGER and MONACO, JJ., concur.
NOTES
[1] The officer admitted that when he approached the car, he could clearly see the temporary tag. Williams, therefore, argues that reversal is warranted based on State v. Diaz, 850 So.2d 435 (Fla.), cert. denied, ___ U.S. ___, 124 S.Ct. 936, 157 L.Ed.2d 745 (2003), which clarified the law relative to what a law enforcement officer may do after stopping a vehicle for an apparent temporary tag violation. In Diaz, the officer stopped the vehicle because he could not read the temporary tag. As he approached the vehicle after it was stopped, he could clearly read the tag and found nothing improper. Because the officer did not have any other reason to stop or detain the driver, the court held that the deputy could do no more than explain the reason for the stop to the driver and that any further detention or interrogation of the driver was improper. Williams' reliance on Diaz is misplaced because the record clearly establishes that the officer also stopped Williams for the window tint violation.
[2] The officer testified at the suppression hearing that he is a "slow writer" and in order to expedite the process of issuing citations, he fills in portions of a number of citations ahead of time. Specifically, he fills in the year, the county, the city and signs the citations. The "county traffic court" information was prestamped on the citation. The only information that the officer had to fill out at the time of the stop was the information obtained from Williams' driver's license and the VIN from the car. The officer testified that filling out this information on the citation took thirty-five minutes.