# IN THE COURT OF APPEALS OF IOWA

No. 20-0929
Filed September 23, 2020

**IN THE INTEREST OF B.S., M.G., J.W., and S.W.,**
**Minor Children,**

**S.W., Mother,**
        Appellant.
_____


Appeal from the Iowa District Court for Linn County, Barbara H. Liesveld, District Associate Judge.


A mother appeals the termination of her parental rights to four children.
**AFFIRMED.**


Mark D. Fisher of Howes Law Firm, P.C., Cedar Rapids, for appellant mother.

Thomas J. Miller, Attorney General, and Tabitha J. Gardner, Assistant Attorney General, for appellee State.

Julie F. Trachta of Linn County Advocate, Inc., Cedar Rapids, attorney and guardian ad litem for minor children.


Considered by Tabor, P.J., Schumacher, J., and Scott, S.J.*

*Senior judge assigned by order pursuant to Iowa Code section 602.9206 (2020).

**SCOTT, Senior Judge.**

A mother appeals the termination of her parental rights to her four children—born in 2009, 2014, 2017, and 2018—pursuant to Iowa Code section 232.116(1)(f), (h), and (*l*) (2020). On appeal, the mother claims the juvenile court erred in holding the termination hearing telephonically despite her refusal to waive her personal presence and termination is contrary to the children's best interests given the detriment resulting from severance of the parent-child relationships.

## I.    Background

The mother and two oldest children were previously the subjects of child-in-need-of-assistance proceedings. Those proceedings were closed in the fall of 2018. The family again came to the attention of the Iowa Department of Human Services (DHS) roughly six months later, in March 2019, upon allegations that the mother and the father of two of the children were using methamphetamine while caring for all four children and the mother attempted to sell one of the children for $100. The children were removed from parental custody, after which each of the children tested positive for methamphetamine. One of the children also tested positive for marijuana.

Throughout the remainder of the proceedings, the mother was generally inconsistent in participating in services relative to her substance-abuse and mental-health issues. The mother never progressed beyond fully-supervised visits. Semi-supervised visits were considered in December 2019, but then service providers observed marijuana in the mother's home during a visit. Ultimately, in March 2020, the State petitioned for termination of the mother's parental rights. Following a termination hearing in early May, the court terminated the mother's

rights pursuant to Iowa Code section 232.116(1)(f), (h), and (*l*). This appeal followed.[1]

## II. Standard of Review

Appellate review of orders terminating parental rights and constitutional claims is de novo. *In re L.T.*, 924 N.W.2d 521, 526 (Iowa 2019); *In re C.M.*, 652 N.W.2d 204, 209 (Iowa Ct. App. 2002). Our primary consideration is the best interests of the children, *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006), the defining elements of which are the children's safety and need for a permanent home. *In re H.S.*, 805 N.W.2d 737, 748 (Iowa 2011). However, we review the denial of a motion to continue for an abuse of discretion, which occurs "when 'the decision is grounded on reasons that are clearly untenable or unreasonable,' such as 'when it is based on an erroneous application of the law.'" *In re A.H.*, ___ N.W.2d ___, ___, 2020 WL 4201762, at * 3 (Iowa Ct. App. 2020) (quoting *In re M.D.*, 921 N.W.2d 229, 232 (Iowa 2018)).

## III. Discussion

### A. Motion to Continue

First, the mother argues the juvenile court erred in holding the termination hearing telephonically despite her refusal to waive her personal presence.

The State filed its petition for termination of the mother's rights on March 2, 2020. Following the pretrial conference days later, the court set the matter for a final pretrial conference on April 22 and trial on May 4. On April 6, the supreme court entered an order containing the following provision:

---

[1] The parental rights of the children's fathers were also terminated. No father appeals.

> Those hearings that are set between April 6, 2020 and June 15, 2020 should either be continued until after June 15, 2020 or should ONLY be conducted by video or phone conferencing. <u>Uncontested</u> hearings should use remote technology. <u>Contested</u> hearings, such as a contested adjudication hearing or termination hearing, may be conducted via remote technology if <u>all</u> parties agree, and thereafter file a written waiver of personal appearance or waive such appearance on the record. If one party objects to proceeding by phone, and the juvenile court believes the matter should nonetheless go forward and not be postponed, then the court can order telephonic testimony.

Iowa Supreme Ct. Supervisory Order, *In the Matter of Ongoing Provisions for Coronavirus/COVID-19 Impact on Child Welfare and Juvenile Justice Youth and Families* (Apr. 6, 2020), *available at* https://www.iowacourts.gov/collections/488/files/1079/embedDocument/.

On April 22, the mother filed a motion to continue the telephonic trial scheduled on May 4, stating "she does not waive her personal presence in the matter." Thereafter, the court entered an order stating its belief that "the matter should nonetheless go forward and not be postponed" despite the mother's "refusal to waive presence" and ordered the telephonic trial be held as scheduled. The court repeated its ruling in its termination order.

On appeal, the mother argues the denial of her motion violated her constitutional rights to due process and confrontation. While the State does not contest error preservation on the constitutional and other vague claims, we find they are not preserved. *See, e.g., State v. Bergmann*, 633 N.W.2d 328, 332 (Iowa 2001) ("Although the State concedes that error has been preserved . . . , we disagree."); *Top of Iowa Co-op v. Sime Farms, Inc.*, 608 N.W.2d 454, 470 (Iowa 2000) ("In view of the range of interests protected by our error preservation rules, this court will consider on appeal whether error was preserved despite the

opposing party's omission in not raising the issue at trial or on appeal."). A de novo review of the record provides no indication that either constitutional argument was raised in or decided by the juvenile court, so error is not preserved. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002) ("It is a fundamental doctrine of appellate review that issues must ordinarily be bother raised and decided by the district court before we will decide them on appeal.").

The mother also suggests she was prejudiced because she was (1) "limited in her ability to communicate with her attorney and thereby contribute to her own case," (2) the record indicates "the mother could not hear," and (3) "the mother was unable to produce physical evidence that would otherwise have been available were she personally present." But no complaints were raised about these matters during the termination trial, so the issues are likewise not preserved for our review.[2] *See id.* Lastly, we disagree with any implication by the mother that the juvenile court may only order a telephonic hearing to proceed over objection when emergency circumstances are present. The relevant provision from our supreme court's order simply leaves it to the juvenile court to decide whether the matter should proceed. In any event, where, as here, the limitations period has

---

[2] In any event, as to the first complaint, on one occasion during trial, the mother's counsel noted she needed to text the mother to see if she wanted her to ask any additional questions of the DHS worker. The court advised, "Let us know when you're ready." Thereafter, counsel followed up with several more questions of the worker. We find no prejudice.

As to the second complaint, the mother references a portion of the transcript where the mother questions, "Huh?" following a question. The question was then repeated, and the mother provided her answer to it. Again, we find no prejudice.

As to the third complaint, the mother references a portion of the transcript where the mother noted she keeps two calendars of the children's appointments—in her purse and on her wall. Holding the hearing telephonically did not deprive the mother of offering this physical evidence by other means.

lapsed, we view termination proceedings with a sense of urgency. *See In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000). Finding no cause for reversal on the issues properly presented, we affirm the denial of the motion to continue.

B.     Best Interests and Statutory Exception

The mother does not challenge the sufficiency of the evidence supporting the statutory grounds authorizing termination, so we need not address the first step of the three-step termination framework. *See In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Instead, the mother claims termination is contrary to the children's best interests given the detriment resulting from severance of the parent-child relationships. We choose to separately address the often-conflated best-interests and statutory-exception arguments. *See In re A.S.*, 906 N.W.2d 467, 472–73 (Iowa 2019) (discussing three-step termination framework); *In re A.R.*, 932 N.W.2d 588, 591 (Iowa Ct. App. 2019) (same).

In determining whether termination is in the best interests of children, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2).

At the termination hearing in early May, one of the family safety, risk, and permanency (FSRP) services providers opined the children could not be returned to the mother's care, noting her continuing concerns for the mother's substance abuse, mental health, and inability to supervise the children and manage the children's medical and behavioral appointment schedules. The DHS worker testified to harboring the same ongoing concerns and opined delaying permanency

would have a negative impact on the children's well-being. The FSRP provider also testified the children are in need of permanency, she could not recommend returning the children to the mother, and additional time would not alleviate the need for removal. Another provider opined, based on the mother's path, she would need "about two more years" of participating in services before the children could be returned to her.

As noted, the defining elements of children's best interests are the children's safety and need for a permanent home. *H.S.*, 805 N.W.2d at 748. "It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will . . . be able to provide a stable home for the child." *In re A.B.*, 815 N.W.2d 764, 777 (Iowa 2012) (quoting *P.L.*, 778 N.W.2d at 39). The mother has been given ample time to get her affairs in order and these children's best interests are best served by providing permanency and stability now. *See id.* at 778 ("It is simply not in the best interests of children to continue to keep them in temporary foster homes while the natural parents get their lives together." (quoting *In re C.K.*, 558 N.W.2d 170, 175 (Iowa 1997))). The children are thriving and integrated into their respective foster homes. Continued stability and permanency in these homes are in these children's best interests. *See* Iowa Code § 232.116(2)(b); *cf. In re M.W.*, 876 N.W.2d 212, 224–25 (2016) (concluding termination was in best interests of children where children were well-adjusted to placement, the placement parents were "able to provide for their physical, emotional, and financial needs," and they were prepared to adopt the children). These children should not have to wait any longer for permanency; they are entitled to immediate constant, responsible, and

reliable parenting. *See In re L.L.*, 459 N.W.2d 489, 495 (Iowa 1990). Because termination followed by adoption will satisfy these children's need for a permanent home, we conclude termination is in their best interests.

Iowa Code section 232.116(3)(c) allows the juvenile court to forego termination when "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." We first note the application of the statutory exceptions to termination is "permissive, not mandatory." *M.W.*, 876 N.W.2d at 225 (quoting *In re A.M.*, 843 N.W.2d 100, 113 (Iowa 2014)). While we acknowledge bonds exist between the mother and children, we find the evidence insufficient to show "termination would be detrimental to the child[ren] . . . due to the closeness of the parent-child relationship[s]." *See A.S.*, 906 N.W.2d at 476 (noting parent bears burden to establish exception to termination). We therefore decline to apply the statutory exception to termination. Alternatively, we conclude application of the exception would be contrary to the children's best interests.

## IV.     Conclusion

We affirm the termination of the mother's parental rights.

**AFFIRMED.**