**IN THE COURT OF APPEALS OF IOWA**

No. 23-1811
Filed August 21, 2024

**STATE OF IOWA,**
        Plaintiff-Appellee,

**vs.**

**JEROD MICHAEL COX,**
        Defendant-Appellant.
_____

Appeal from the Iowa District Court for Bremer County, Peter B. Newell,
Judge.

Jerod Cox appeals the denial of his motion to suppress. **AFFIRMED.**

Jesse M. Marzen of Marzen Law Office, P.L.L.C., Waverly, for appellant.

Brenna Bird, Attorney General, and Nicholas Siefert and Anagha Dixit,
Assistant Attorneys General, and Makenna Konkol, Law Student, for appellee.

Considered by Ahlers, P.J., and Chicchelly and Buller, JJ.

**AHLERS, Presiding Judge.**

Jerod Cox was charged with and convicted of interference with official acts resulting in bodily injury in violation of Iowa Code section 719.1(1)(a) and (c) (2022). The charge stemmed from Cox's physical resistance to law enforcement officers attempting to get him to exit his vehicle to continue their investigation of suspected criminal conduct. Before his bench trial, Cox moved to suppress evidence on the ground that the officer did not have reasonable suspicion to support the seizure that he resisted. The district court denied the motion, and Cox appeals that ruling.

Cox contends law enforcement officers' seizure of him violated his rights against unreasonable searches and seizures under the Fourth Amendment of the United States Constitution and article I, section 8 of the Iowa Constitution. We review constitutional challenges to the denial of a motion to suppress de novo. *State v. Stevens*, 970 N.W.2d 598, 601 (Iowa 2022). We independently evaluate "the totality of the circumstances as shown by the entire record." *Id.* at 602 (quoting *State v. Scheffert*, 910 N.W.2d 577, 581 (Iowa 2018)). We defer to the district court's factual findings, but we are not bound by them. *Stevens*, 970 N.W.2d at 602.

On the night at issue, Cox was sitting in the driver's seat of a running vehicle parked in an otherwise empty church parking lot around 11:30 p.m. A law enforcement officer on routine patrol noticed the vehicle parked alone in the parking lot and was aware of reports from the church that people had been stealing cans from the redemption box at the church. The officer pulled her vehicle into the parking lot to investigate, but she did not activate her patrol vehicle's lights or block

Cox's vehicle. The officer approached the driver's side of the vehicle and saw Cox tapping on his cell phone. Cox did not react to the officer's approach or her first knock on his car window. When Cox did not respond to a second knock on his window, the officer shined her flashlight into the vehicle. In response, Cox turned toward the officer. He also turned his cell phone screen toward the officer, presumably to show what he was doing on his phone, and said something the officer could not hear because of Cox's closed window. The officer noticed that Cox's eyes were bloodshot and glassy, which, coupled with Cox's slow responses to her presence and questions, made the officer suspect he may be impaired—a suspicion she immediately relayed to another officer. The original officer repeatedly asked Cox to open his car window or door so she could talk to him, but Cox largely ignored her. Finally, Cox lowered his car window about an inch. The officer tried to engage Cox several times, asking questions about what he was doing and mentioning that he had bloodshot eyes. Cox was resistant to the officer's questioning, repeatedly claiming that he wasn't doing anything wrong and often failing to respond to the officer's questions or requests. He also repeated the officer's concern back to her incorrectly, mumbling something about his eyes not being dilated—a claim the officer never made. When asked how much he had to drink that night, Cox mumbled something unintelligible.

During this exchange, another officer arrived. As the original officer suspected Cox was impaired, the officers decided to ask Cox to exit the vehicle so they could determine whether he was operating while intoxicated. The officers repeatedly made this request. Cox refused, and in doing so, made several slurred or mumbled responses that were not responsive to things the officers had said,

and he argued with them. When told they were not concerned about the game he was playing on his phone but were concerned that he was operating his vehicle while intoxicated, Cox claimed he was not operating a vehicle and then immediately thereafter reached down and turned off the vehicle that had been running, pulled the key out of the ignition, and dropped the keys in the center console area of his car. He then admitted driving into the parking lot.

As Cox refused to get out of the car, the officers opened the driver's side door to remove Cox from the vehicle. Cox resisted, holding on to the steering wheel and trying to brace himself between the seat and steering wheel as the officers tried to forcibly remove him from the car. One of the officers was injured in the struggle. After deploying a taser, the officers were finally able to remove Cox from the vehicle. They arrested him for interference with official acts.

Cox claims the officer did not have reasonable suspicion to continue investigating once it was clear he was just playing a game on his phone and their later seizure of him was unlawful so the evidence the officers obtained should be suppressed.

At the outset, we note that we have a question as to what evidence Cox seeks to suppress, as it is not clear from the record or his brief. Based on the transcript of the suppression hearing, it appears the district court had the same question. This question has importance because it may impact whether we should decline to address the merits of Cox's appeal due to the mootness doctrine. *See Riley Drive Ent. I, Inc. v. Reynolds*, 970 N.W.2d 289, 296 (Iowa 2022) ("Courts exist to decide cases, not academic questions of law." (citation omitted)). Further, even were we to assume that the officers had no lawful reason to continue to

investigate or to seize Cox, Cox had no right to resist the seizure. *See State v. Wilson*, 968 N.W.2d 903, 915 (Iowa 2022) ("Even though an initial arrest is unlawful, a defendant has no right to resist the arrest. If the defendant does so, probable cause exists for a second arrest for resisting." (quoting *State v. Dawdy*, 533 N.W.2d 551, 555 (Iowa 1995))).[1]

If Cox seeks to suppress the evidence of his resistance, we see no basis for doing so, as Cox provides no argument for why evidence of a new crime was unlawfully obtained here. If Cox seeks to suppress the evidence leading up to his seizure, we are at a loss to determine what that evidence is, as the only crime with which Cox was charged was interference with official acts for resisting the attempted seizure. Cox identifies no evidence prior to the officers' attempt to get him out of the car that is being used against him. *See State v. Bergmann*, 633 N.W.2d 328, 333 (Iowa 2001) ("[W]e are skeptical that [the defendant] can raise any successful constitutional challenge regarding this pat down because nothing was found from it that is now being used against [the defendant]."). As Cox has identified no evidence that should be suppressed leading up to the attempted seizure, we question whether assessing the officer's reasonable suspicion for continued contact with Cox is solely an academic question of law that we should decline to address under the mootness doctrine. In the interest of thoroughness

---

[1] We recognize that the "new crime" rule would likely obviate any need to discuss reasonable suspicion. *See Dawdy*, 533 N.W.2d at 555–56 (holding that when a defendant resists a seizure, even if the seizure is unlawful, probable cause exists for a second arrest for resisting). However, the State failed to raise the rule as a ground for denying Cox's motion to suppress before the district court or as a ground for affirming such denial in its appellate brief, so we do not resolve the case on that issue and must consider whether to address the question of whether reasonable suspicion supports the seizure.

and in light of the briefing, however, we bypass any mootness concerns and address Cox's reasonable-suspicion argument.

Officers with reasonable suspicion to believe a person is committing a crime are permitted to temporarily detain that person for investigatory purposes. *State v. Baker*, 925 N.W.2d 602, 610 (Iowa 2019). The State must show "the officer had specific and articulable facts that, taken together with rational inferences from those facts, would lead the officer to reasonably believe criminal activity is afoot." *State v. Vance*, 790 N.W.2d 775, 781 (Iowa 2010). Once a driver is lawfully detained for investigatory purposes, it is lawful for the officer to order the driver out of the vehicle. *Pennsylvania v. Mimms*, 434 U.S.106, 111 (1977).[2]

Cox does not challenge the officer's original approach of his vehicle. Instead, he challenges her continued presence after discovering he was playing a game on his phone. But information the officer obtained immediately after making contact with Cox justified continued investigation. The officer's bodycam and suppression hearing testimony establish that she perceived Cox's eyes to be bloodshot and glassy as soon as he looked at her. She claimed that this, in conjunction with Cox's delayed responses to her questions, caused her to suspect he may be intoxicated. She also noted that she had interacted with Cox before, which gave her a baseline of how he normally acts, and his actions that night were

---

[2] We generally interpret article I, section 8 of the Iowa Constitution to track with the Fourth Amendment of the United States Constitution. *State v. Brown*, 930 N.W.2d 840, 847 (Iowa 2019). Cox has not suggested we interpret the Iowa Constitution's search and seizure provisions "differently from its federal constitutional counterpart, [so] we will apply the general standards as outlined by the United States Supreme Court for addressing a search and seizure challenge under the Iowa Constitution." *State v. Tyler*, 830 N.W.2d 288, 292 (Iowa 2013).

different than his normal manner of interacting. This raised her suspicion that he may have been impaired. *See State v. Bergmann*, 633 N.W.2d 328, 333 (Iowa 2001) (noting an officer's past experience with a suspect can be a factor supporting a finding of reasonable suspicion).

Cox argues that bloodshot eyes were the only sign of intoxication, and bloodshot eyes alone cannot support a finding of reasonable suspicion of intoxication. But it was not bloodshot eyes alone that supported the officer's suspicion. The officer explained that it was a combination of Cox's bloodshot and glassy eyes, delayed responses, and her knowledge of his usual mannerisms that caused her to think he may be intoxicated. When bloodshot and watery eyes are combined with other facts indicating the person may be intoxicated, we have found the officer has reasonable suspicion. *See State v. Ewalt*, No. 17-1189, 2018 WL 5292090, at *4 (Iowa Ct. App. Oct. 24, 2018) (finding reasonable suspicion where defendant had bloodshot, watery eyes, his hands shook, and he had recently lit a cigarette "possibly to mask the smell of alcohol and marijuana," and he avoided eye contact with the officer). In his brief, the only instance Cox points to at which he claims a seizure occurred is when the officers pulled him from the vehicle. We conclude that, at the time the officers took steps to pull Cox from his vehicle after he refused to get out, the officers had reasonable suspicion that Cox was operating the vehicle while intoxicated based on the combination of observations previously described. Therefore, the officers' seizure of Cox was lawful, and the district court correctly denied Cox's motion to suppress evidence.

**AFFIRMED.**